[No. A062370. First Dist., Div. Four. Mar. 16, 1994.]

GEOFFREY JUE et al., Plaintiffs and Appellants, v.
KENN SMISER et al., Defendants and Respondents.

**COUNSEL**

William D. Whiteman for Plaintiffs and Appellants.

Cooper, White & Cooper, Kurtis J. Kearl and Barbara L. Snider for Defendants and Respondents.

**OPINION**

**ANDERSON, P. J.**—The case at bench requires this court to resolve the following question: May a purchaser of real property who learns of potential material misrepresentations about the property after execution of a purchase agreement—but before consummation of the sale—close escrow and sue for damages? Our answer is, "yes."

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Facts*[1]

On April 1, 1992, Kenn and Victoria Smiser (respondents) listed their home at 636 Hillgirt Circle in Oakland for sale with Tabaloff & Company, a

---

[1]All material facts are undisputed and derived from the evidence submitted for and against the motion for summary judgment described in part I.B., *post.*

realtor (Tabaloff).[2] Tabaloff then began active marketing of the home. On April 22, 1992, an article about the home appeared in the San Francisco Chronicle. The article indicated that the home had been designed by Julia Morgan, a celebrated architect whose credits include Hearst Castle. Geoffrey and Charlene Jue (appellants) saw the article and called Tabaloff to make arrangements to see the home. When they toured it appellants were given a brochure which indicated that it was an "Authenticated, Julia Morgan Design, built 1917."

Appellants made a full price offer for the home, contingent on the sale of Geoffrey Jue's home. Respondents countered, requiring that the purchase agreement for their home not be contingent on the sale of Mr. Jue's home. Appellants accepted the counteroffer, and the parties agreed that the sale of respondents' home would close on June 11. Geoffrey Jue immediately listed his home for sale with Tabaloff, and he accepted an offer to sell it on May 5.

On June 8 appellants went to First American Title Company (apparently the escrow company for the sale) and signed the documents required for completion of the sale on June 11. After signing a note and deed of trust, as well as other closing documents, appellants were asked by Tabaloff to sign a contract supplement/addendum with two insignificant provisions and the following disclaimer: "BUYER AND SELLER ACKNOWLEDGE THAT THE RESIDENCE AT 636 HILLGIRT CIRCLE IS COMMONLY KNOWN TO BE A JULIA MORGAN DESIGN AND THAT THERE ARE NO PLANS AVAILABLE AT THE OAKLAND CITY HALL VERIFYING SAME." Appellants signed off on (agreed to) the other two provisions in the supplement/addendum but did not sign off on the disclaimer.

Over the next two days appellants spoke to Sara Boutelle, the author of a book on Julia Morgan homes, who told appellants that she was convinced the home was designed by Morgan; they also spoke to Lynn Stone, Morgan's goddaughter, who indicated that she was unaware of any proof that the home was designed by Morgan.

On June 9 respondents signed the supplement/addendum, as modified by appellants. Escrow closed, and title to the home passed to appellants on June 11.

### B. *Procedural History*

On November 24, 1992, appellants filed a complaint seeking damages from Tabaloff, two of Tabaloff's agents and respondents. The claims against

---

[2]Tabaloff and two of its agents are defendants in the action brought by appellants which is described in part I.B., *post*. However, they are not parties to this appeal.

respondents were based on a number of different theories: fraud, concealment, negligent misrepresentation, negligence, mutual mistake of fact, unilateral mistake of fact (on the part of appellants), intentional infliction of emotional distress, negligent infliction of emotional distress, and various common counts.

In February 1993 respondents filed a motion for summary judgment or, in the alternative, summary adjudication of each cause of action asserted against them. The motion was based on respondents' assertion that appellants' claims were barred as a matter of law because it was "undisputed that [appellants] had actual knowledge of all material facts before the close of escrow and nevertheless voluntarily elected to proceed with the purchase of the property in the face of such knowledge."

Respondents' motion for summary judgment was granted. In its written order of April 6, 1993, the trial court stated its reason for granting the motion: "The bottom line is that [appellants] knew, before the close of escrow, that there were no official records to authenticate 636 Hillgirt Circle as a Julia Morgan design. They chose to proceed anyway; thus they did not purchase the property in justifiable reliance on the alleged fraud. All [appellants'] causes of action fail for the same reason."

Thereafter, respondents moved for entry of judgment under Code of Civil Procedure section 437c[3] and for an award of attorney fees under the purchase agreement between the parties. Both motions were granted, and the court awarded respondents $43,118.59 in fees and costs.

Appellants contend on appeal that the trial court erred in granting summary judgment in favor of respondents and that the trial court abused its discretion in awarding fees in the sum noted. Because we have determined that the trial court erred in granting summary judgment to respondents, the award of fees necessarily falls.

## II. Appellants' Choice to Close Escrow With Knowledge of Respondents' Apparent Misrepresentations Does Not Preclude a Suit for Damages

"When a party learns that he has been defrauded, he may, instead of rescinding, elect to stand on the contract and sue for damages, and, in such case his continued performance of the agreement does not constitute a waiver of his action for damages. [Citations.]" (*Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744, 750 [192 P.2d 935].)

Appellants urge us to follow *Bagdasarian* and our decision in *Storage Services* v. *Oosterbaan* (1989) 214 Cal.App.3d 498 [262 Cal.Rptr. 689]

---

[3]Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

and rule that the trial court erred in granting summary judgment predicated on appellants' supposed lack of "justifiable reliance" on respondents' fraud when appellants closed escrow. Respondents, in turn, argue (a) that reliance is an essential element in any fraud claim and (b) that California law does not permit a buyer who acquires knowledge of a seller's alleged fraud while the purchase agreement is executory to close escrow and sue for damages.[4]

In *Storage Services*, a partnership, Storage Services, entered into a contract with a property owner, Grocers Wholesale Co., to purchase an undeveloped lot in San Francisco; Storage Services intended to build a ministorage facility on the lot which was adjacent to a parcel owned by the State of California (Caltrans). (*Storage Services* v. *Oosterbaan, supra,* 214 Cal.App.3d at p. 504.) During the course of negotiations, Grocers Wholesale's realtors told Storage Services' representatives that Caltrans had no interest in the subject property. (*Id.,* at p. 505.) Over time, Storage Services paid money into escrow and made arrangements to develop the property. (*Id.,* at p. 506.)

Before escrow closed the title company informed both parties that the state intended to acquire the property. (*Storage Services* v. *Oosterbaan, supra,* 214 Cal.App.3d at p. 506.) Storage Services refused to close the deal after receiving that notice. Thereafter, the state filed a complaint in eminent domain against Grocers Wholesale, which in turn cross-complained against Storage Services to quiet title. Storage Services then cross-complained against Grocers Wholesale and its realtor. (*Id.,* at pp. 506-507.) Storage Services ultimately entered into a complex settlement agreement with Grocers Wholesale under which (a) Storage Services received, among other things, all of Grocers Wholesale's right, title and interest in the property and (b) Storage Service's claims against the realtor were preserved. (*Ibid.*) At trial the jury found that the realtor had made material misrepresentations to Storage Services and that Storage Services had acted in justifiable reliance on those representations. (*Ibid.*)

On appeal the realtor argued that, since Storage Services only acquired the property under the terms of the settlement agreement with Grocers Wholesale, which agreement was struck after the fraud was discovered, Storage Services could not claim that it acquired the property in reliance on the fraud. (*Storage Services* v. *Oosterbaan, supra,* 214 Cal.App.3d at pp. 510-511.)

---

[4]As part of the motion for summary judgment, the parties briefed the question of whether or not appellants' apparent knowledge that the home could not be confirmed as a Julia Morgan design when they closed escrow impacted on their right to recover on their nonfraud claims. However, that question is not addressed by the parties on appeal. Accordingly, we limit our opinion to a consideration of the effect of appellants' knowledge on their claim for fraud.

In rejecting the realtor's argument, we noted that Civil Code section 3343 which establishes the measure(s) of recovery for fraud in the sale of real property "suggests that fraud at the inception of the transaction is sufficient." (*Storage Services* v. *Oosterbaan, supra,* 214 Cal.App.3d at p. 511.) In other words, we determined that reliance must be established at the time the initial contract is struck. It is not necessary that a claimant establish *continuing* reliance until the contract is fully executed in order to maintain an action for damages.

In the case at bench respondents argue that our decision in *Storage Services* was "expressly limited" to the "specific facts" of that case. Respondents also argue that our decision should be read as "reconfirm[ing] the general rule [that] a party discovering fraud while the contract is still executory cannot complete performance and still sue for fraud." Respondents' reading of our decision in *Storage Services* is incorrect.

First, the only part of our opinion which could be construed as limiting its application to the facts of that case is our analysis of whether or not Storage Services should be deemed to have "purchase[d] or otherwise acquire[d]" the subject property so as to come within the provisions of Civil Code section 3343, subdivision (a)(4). (*Storage Services* v. *Oosterbaan, supra,* 214 Cal.App.3d at pp. 510-511.) Our analysis of whether or not Storage Services could maintain an action for fraud against the realtors, when Storage Services learned of the fraud after execution of the original purchase agreement and before escrow closed, was not so limited.

Respondents' second argument constitutes a distortion of our opinion in *Storage Services.* We specifically noted that any party who learns of a fraud before a contract has been completed will not complete it in "reliance" on the fraud. (*Storage Services* v. *Oosterbaan, supra,* 214 Cal.App.3d at p. 511.) However, we noted that under *Bagdasarian,* a party's continued performance of the agreement does not constitute a waiver of his action for damages. (*Ibid.*)[5]

In their petition for rehearing, respondents cite two cases—*Kazerouni* v. *De Satnick* (1991) 228 Cal.App.3d 871 [279 Cal.Rptr. 74] and *Elkind* v.

---

[5]Respondents' assertion that reliance is an essential element in any fraud claim is not disputed by appellants, nor is it called into question by our opinion in *Storage Services.* The cases cited by respondents in support of the proposition that appellants cannot establish such reliance in this case are not on point. In *Smith* v. *Brown* (1943) 59 Cal.App.2d 836, 838 [140 P.2d 86], the Court of Appeal denied relief to purchasers of real property who made their own investigation of the facts (alleged misrepresentations) which constituted the basis for their claim of fraud and learned the "true facts" *before* they entered into an exchange agreement with the defendant. In *Carroll* v. *Dungey* (1963) 223 Cal.App.2d 247, 254 [35 Cal.Rptr. 681], the Court of Appeal noted that reliance cannot be established if an independent investigation, undertaken with reasonable diligence *before* a contract is struck reveals or should reveal the "true facts." No evidence was introduced in support of the motion for summary judgment herein that appellants undertook any investigation prior to April 27 which would have

*Woodward* (1957) 152 Cal.App.2d 170 [313 P.2d 66]—for the proposition that a buyer must continue to rely on a seller's misrepresentations through the close of escrow in order to prevail on a fraud claim. Both cases are distinguishable from the one at hand.

In *Kazerouni* and *Elkind,* the trial and appellate courts denied recovery to buyers whose independent investigations of the gross receipts of the businesses they were purchasing eliminated any potential reliance on the sellers' representations pertaining to those receipts. However, the buyers in *Kazerouni* and *Elkind* did not *assert* that reliance on the sellers' misrepresentations at the time the original purchase agreements were signed was adequate to sustain a claim for fraud under *Bagdasarian.* In fact, neither case addresses *Bagdasarian* or the principle for which it is cited herein.[6] Because neither considers *Bagdasarian* and because neither specifically holds that "continuing" reliance is required to sustain a claim for fraud, we find them irrelevant to our inquiry.

In sum, we see no reason to deviate from or limit our decision in *Storage Services* here. The trial court erred in determining that appellants' (apparent) knowledge that the home at 636 Hillgirt Circle could not be confirmed as a Julia Morgan design prior to the close of escrow precluded their advancement of claims against respondents. The relevant issue was (is) whether or not appellants relied on respondents' (alleged) misrepresentations when the purchase agreement was struck on April 27, 1992. No evidence was presented in support of respondents' motion for summary judgment which

revealed the "true facts" pertaining to the inability to authenticate the home as a Julia Morgan design. In *Roland* v. *Hubenka* (1970) 12 Cal.App.3d 215, 223-225 [90 Cal.Rptr. 490], the Court of Appeal determined that alleged misrepresentations made by a seller *after* a purchase agreement had been signed could not serve as the basis for a fraud claim because the buyer could not have relied on those misrepresentations when the agreement was struck. In the case at hand, the alleged misrepresentations were made before April 27.

[6]The fact that such assertions were not made by the buyers in either case may be a reflection of the language of the purchase agreements the courts were considering. The terms of those agreements are not set forth in either case, although the *Elkind* court notes that the initial "Prospective Buyers Agreement" executed by the parties contained a disclaimer by the seller regarding the "status" of the business. (*Elkind* v. *Woodward, supra,* 152 Cal.App.2d at p. 172.) Where the sale of an ongoing business is concerned, a purchase agreement often contains a provision requiring and/or allowing a buyer to make an independent examination of the business's finances. When such an examination is contemplated by the parties at the time the original purchase agreement is struck, a buyer will face a difficult burden of establishing that he, in fact, relied on a seller's representations when the original agreement was struck. The fact that the buyers and sellers in *Kazerouni* and *Elkind* may have contemplated independent investigations of the businesses being sold—evidenced by the fact that such investigations were actually undertaken—further distinguishes those cases from this, where no evidence was presented in support of the motion for summary judgment that further investigation of the validity of the representations regarding Julia Morgan was contemplated by *anyone.*

served to negate the appellants' claim that they did rely on those (alleged) misrepresentations at that time.[7]

Sound public policy considerations support our decision. The Legislature has enacted a series of statutes designed to foster honesty and full disclosure in real estate transactions. (See Civ. Code, §§ 1102 et seq. and 2079 et seq.) Our decision should encourage sellers and their representatives to investigate and learn the "true facts" pertaining to real property before it is offered for sale. Possession and communication of such knowledge will be of benefit to all parties in the course of negotiations leading to execution of a sales agreement.

In addition, if we were to adopt the rule urged upon us by respondents, a buyer of real property who learns of a misrepresentation or a potential misrepresentation after a purchase contract is struck but before escrow closes would be faced with an extraordinarily difficult choice: (a) consummate the purchase and waive any claim for damages or (b) rescind and deal with the consequences of that choice. Among those consequences may be (1) problems in securing a return of moneys deposited with the escrow holder; (2) the loss of moneys spent to secure a loan and to meet other costs of acquisition, such as escrow fees; and (3) the risk of being sued by the seller and/or the seller's representatives. One who may be the victim of another's fraud should not be forced to make such a choice. That policy is especially strong where, as here, it is unclear whether or not a particular representation was (is), in fact, false at the time a choice is required, and the time period in which to choose is extraordinarily short.

The judgment is reversed. Respondents are to bear costs on appeal.

Poché, J., and Perley, J., concurred.

A petition for a rehearing was denied April 15, 1994, and the opinion was modified to read as printed above.

---

[7]At trial appellants obviously will have the burden of establishing that respondents knew or should have known prior to April 27 that the home could not be confirmed as a Julia Morgan design.