99 F.3d 1146
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
AMERICAN CAPITAL INVESTMENTS, INC.; Stephen J. Murphy;
Kenneth A. Sorensen; Richard D. Otto; Adfin Corporation;
ACI Investors Protective Association, and approximately 127
ACI (American Capital Investments) Investors, Defendants.
William SHAW, Appellant,
v.
Richard G. SHAFFER, Court Appointed Receiver for Defendant, Appellee.
 No. 95-55385.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 6, 1996.
Decided Oct. 22, 1996.
 
 Before: FLETCHER and TASHIMA, Circuit Judges, and RESTANI,* Court of International Trade Judge.
 MEMORANDUM**
 Appellant William Shaw ("Shaw") appeals from the order of the district court denying him leave to record a grant deed of a fee interest in real property included within an SEC receivership estate ("Reconsideration Order"). We affirm.
 BACKGROUND
 Shaw is one of the victims of the fraudulent real estate investment scheme of American Capital Investments, Inc. ("ACI"). Like many others caught in ACI's net, Shaw found his promised share in ACI's riches to be illusory. The district court has now reduced all investors' interests in the ACI ventures to claims against the ACI receivership estate for a pro-rata share of ACI's assets based on their net investments, pursuant to its Equal Treatment Order ("ETO").
 Shaw claims an interest based on a copy of an unrecorded grant deed giving him partial title to an ACI-owned property. Shaw applied for (1) reconsideration of the court's Order re: Ex Parte Application, and (2) leave to record his grant deed. The district court held an evidentiary hearing and permitted Shaw to testify under oath regarding his alleged grant deed.
 Shaw had initially invested in ACI pursuant to a promissory note. Sometime in the first half of 1993, Shaw communicated his intent to withdraw his investment to ACI's president, Steven Murphy ("Murphy"). Soon afterwards, Shaw received a copy of a grant deed in the mail. The deed purported to grant Shaw and his wife an undivided 0.29 percent interest in Pacific Centre, one of eight ACI properties sold in a receiver's sale that closed on June 30, 1995. The deed appeared to have Murphy's signature on it. After receiving the alleged deed, Shaw agreed to withdraw only a portion of the funds he had invested in ACI.
 Shaw pressed Murphy over several months to record the deed and to send him the original. Murphy repeatedly promised to do so. However, the deed was never recorded, and the original was not found until after the instant appeal had been taken.
 At the hearing, ACI's court-appointed receiver ("Receiver") submitted the declaration of an expert in graphology, who concluded that the signature was not Murphy's, but a forgery. Shaw was not afforded an opportunity to cross-examine the expert, and Shaw did not present any evidence of his own of the signature's validity. Without citation to any part of the record, Shaw now claims that he has in his possession copies of two letters from Murphy and ACI "evidencing the validity of [his] deed." Shaw does not explain what he means by that, or why the letters are not part of the district court record.
 After the hearing on Shaw's deed, the district court permitted additional briefing. It then rendered the Reconsideration Order, which, inter alia, denied Shaw leave from the receivership stay to record his deed. The district court found the deed was a product of the ACI fraud because of evidence that: (1) the signature was a forgery; (2) the deed was unrecorded although ACI had months to record it; and (3) the original deed was missing. The court further found that ACI and Murphy never intended the deed to vest title in Shaw. It, thus, determined that the deed was defective and conveyed no property interest to Shaw. Because Shaw had no valid legal interest in the property, the district court concluded that Shaw's investment would be better handled pursuant to the ETO.
 JURISDICTION
 The Reconsideration Order is an interlocutory order. We have jurisdiction under 28 U.S.C. § 1292(a)(1), which permits appeals from interlocutory orders "refusing to dissolve or modify injunctions...." The Reconsideration Order refuses to dissolve the receivership stay as to Shaw and his grant deed. Cf. In re American Mariner Indus., Inc., 734 F.2d 426, 429 (9th Cir.1984) (decisions of bankruptcy courts granting or denying relief from § 362 automatic stay are final decisions reviewable by this court).
 ANALYSIS
 A. Standard of review
 We review for abuse of discretion a district court's decision whether to grant relief from its own receivership stay. SEC v. Universal Financial, 760 F.2d 1034, 1038 (9th Cir.1985). A district court abuses its discretion if it rests its conclusion on clearly erroneous factual findings or an incorrect legal standard. Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1464 (9th Cir.1995).
 This circuit requires the district court to consider three factors in deciding whether to grant relief from a receivership stay: (1) whether refusing to lift the stay preserves the status quo or whether the moving party will suffer substantial injury; (2) the time in the course of the receivership when the motion is made; and (3) the merits of the moving party's underlying claim. Universal Financial, 760 F.2d at 1038.
 We note that Shaw's application to record his deed came rather late in the receivership proceedings. However, in determining whether the district court abused its discretion in denying the application, we need address only: (1) the merits of his underlying claim; and (2) whether the district court misconstrued the ETO.
 B. Validity of Shaw's deed
 Shaw advances a battery of state law theories to support his contention that he is entitled to record his deed. He argues that the deed is not "defective" under California law.
 1. Defectiveness of deed
 Shaw disputes that the signature on the deed was a forgery, arguing that he had no opportunity to cross-examine the Receiver's graphology expert. However, he offers no specific refutation of the expert's opinion. Undaunted, Shaw argues that even if the signature was not Murphy's, Shaw's testimony proves that ACI and Murphy did "adopt" or "ratify" the signature, making the signature legally effective. He also disputes that the deed was defective on account of ACI's failure to deliver the original deed to him. Shaw argues that the theory of "constructive delivery" obviates the necessity of actual, physical delivery.
 Even assuming that Shaw is correct on all of these points, his deed is still defective because the district court found that ACI and Murphy never intended to vest legal title in Shaw. Intent to convey legal title is a requirement, even in cases of constructive delivery. See, e.g., Hill v. Donnelly, 56 Cal.App.2d 387, 392-93 (1942) ("There may be a constructive delivery of the deed ... so long as acts are shown that indicate the intention of the grantor to vest title by the instrument.").
 ACI and Murphy's lack of intent is evident in their failure to record and physically to deliver the deed, despite months of opportunity to do so and prompting by Shaw. The lack of intent is also evident from the fraudulent nature of ACI's business practices generally: ACI made wild promises to investors on which it never intended to deliver.
 The district court's finding was not clearly erroneous; thus, it properly declared the grant deed defective. ACI conveyed to Shaw no legal interest in the property.
 2. Other theories
 In addition to the deed being allegedly defective, it was never recorded. However, Shaw argues that the Receiver "steps into the shoes" of ACI, and since ACI would not be able to use its fraud or mistake in failing to record the deed as a defense to Shaw's title claim, neither can the Receiver.
 A constructive trust may be imposed "whenever required to prevent a person from being unjustly enriched by his wrongful conduct, even though there is no fiduciary or confidential relationship between the parties." Miller & Starr Current Law of California Real Estate § 30:59 (2nd ed. 1989). A resulting trust achieves the same result in cases of innocent mistake. Id. at § 30:60.
 However, a constructive trust cannot exist unless the property has been wrongfully acquired or detained by a person who is not entitled to its possession, and there must be some other party who is rightfully entitled to the property. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 981 (1995). The party for whom a constructive trust is created either has legal title or was intended to have legal title. Id. The use of a constructive trust is within the sound discretion of the trial court. GHK Assoc. v. Mayer Group, Inc., 224 Cal.App.3d 856, 870-79 (1990).
 As discussed above, the district court properly found that ACI had no intent to vest title in Shaw. This makes the constructive and resulting trust theories inapplicable.
 Shaw next advances a theory of equitable estoppel in title to real property. Under this theory, ACI would be estopped from contesting Shaw's title claim by its fraudulent representations to Shaw that it was conveying title to him. However, this argument must fail because the theory is inapplicable against the Receiver.
 Here, Shaw claims that Murphy and ACI promised to record the deed, and that Shaw relied to his detriment on these admissions by retaining a part of his investment in ACI. But Shaw never claims that defendants actually represented to him that the deed was recorded. Shaw either knew over the course of many months that his deed was still unrecorded, or had "ready and accessible means" of determining that it was unrecorded. Shaw never relied upon any representation that his deed had been validly recorded.
 Shaw argues that the Receiver "steps into the shoes" of ACI, citing FDIC v. O'Melveny & Myers, 114 S.Ct. 2048, 2054 (1994). However, on remand from the Supreme Court, we reasoned incompatibly with Shaw's reading of the Court's decision. See FDIC v. O'Melveny & Myers, 61 F.3d 17, 19 (9th Cir.1995) (per curiam). There, we held that the FDIC was not barred by certain equitable defenses that could have been raised against the insolvent S & L. We reasoned:
 While any defense good against the original party is generally good against the receiver, the rule is subject to exceptions, since, for example, defenses based on a party's unclean hands or inequitable conduct do not generally apply against the receiver.
 Id. (citing Camerer v. California Sav. & Commercial Bank, 4 Cal.2d 159, 170 (1935)). Equitable defenses are inapplicable against a receiver because a receiver is acting for third parties and was not privy to the insolvent institution's inequitable conduct. Id.
 In Camerer, the California Supreme Court stated:
 Although an unrecorded conveyance is valid as against the grantor, his receiver prevails over the holder under the unrecorded instruments under statutes which provide that unrecorded transfers are void as to creditors.... The justice and equity of such exceptions to the general rule that the receiver has only the rights of the insolvent debtor are apparent.
 
 
 1
 Camerer, 4 Cal.2d at 170.
 
 
 2
 We conclude that any equitable estoppel argument that Shaw might have asserted against ACI is not effective against the Receiver.
 
 
 3
 Shaw's last property law argument is that a real estate fraud victim is entitled to an "election of remedies," that is, either to repudiate the contract or to keep title to the property. See Jue v. Smiser, 23 Cal.App.4th 312, 315-17 (1994); Pavlovich v. Niedhardt, 128 Cal.App.2d 559, 561 (1954).
 
 
 4
 These cases do not support Shaw's position. In both Jue and Pavlovich, there was no dispute that title effectively passed from fraudulent seller to defrauded buyer. In both cases, the fraud at issue went to the value of the property, not to the legal title conveyed. See Jue, 23 Cal.App.4th at 315-17 (purchaser closed escrow with knowledge of seller's apparent misrepresentation that home was designed by a famous architect, and court allowed purchaser to pursue damage suit); Pavlovich, 128 Cal.App.2d at 561 (purchaser may upon discovery of fraud repudiate contract and offer to return what he has received and claim damages for fraud, or he may affirm contract, retain what he has received, and sue for damages in an action for deceit). In contrast, Shaw never received good title that he could, under the cases he cites, either retain or return.
 
 
 5
 We conclude that, as a matter of California property law, Shaw was not entitled to record his deed.
 
 C. Equal Treatment Order
 
 6
 Shaw frames his second contention on appeal as: "Whether the district court erred in construing its so-called 'equal treatment' order, which establishes a method for the distribution of money from the estate, as having the purpose and effect of voiding Mr. Shaw's interest in real property."
 
 
 7
 This is an illusory issue. The district court made no such ruling. Rather, it determined that Shaw's deed was defective and conveyed no property interest to him. See Part B(1), supra.
 
 
 8
 Only after the district court had declared Shaw's deed defective did it even mention the ETO. Because Shaw had no valid legal interest in the property, the district court stated that Shaw's investment would be better handled pursuant to the ETO. The district court thus decided to exercise its equitable powers to fashion a remedy, when no remedy at law was open to Shaw. As discussed above, in Part B(2), the "election of remedies" and the equitable doctrines of estoppel and constructive trust were unavailable under the case law to remedy Shaw's legally void deed.
 
 
 9
 The district court did not hold as Shaw claims; there was no error.
 
 D. Due process
 
 10
 Shaw contends the district court deprived him of property without due process of law, contending that the district court's: (1) ex post facto determination that the ETO voided his deed afford him no notice or opportunity to be heard; and (2) failure to hold a full evidentiary hearing in accordance with plenary procedures violated due process.
 
 
 11
 We quickly dispose of the first subissue by reference to Part C, above. The Reconsideration Order did not void Shaw's deed on the basis of the ETO. Rather, the order declared Shaw's deed legally defective on the basis of California property law, as applied to the facts surrounding his deed.
 
 
 12
 On the second subissue, we review de novo whether the district court's exercise of jurisdiction as a federal equity receivership court deprived Shaw of property without due process of law. See In re San Vicente Medical Partners, Ltd., 962 F.2d 1402, 1405 (9th Cir.), cert. denied, 113 S.Ct. 210 (1992).
 
 
 13
 For the claims of nonparties to property claimed by receivers, summary proceedings satisfy due process so long as there is adequate notice and opportunity to be heard. SEC v. Wencke, 783 F.2d 829, 837-38 (9th Cir.), cert. denied, 479 U.S. 818 (1986); see also SEC v. Universal Financial, 760 F.2d 1034, 1037 (9th Cir.1985) (where investors had been afforded virtually all procedural protections which would have been available in plenary proceedings, and had notice of the nature of the proceedings, it was not improper for the district court summarily to adjudicate investors' claims).
 
 
 14
 Shaw cites United States v. Arizona Fuels Corp., 739 F.2d 455 (9th Cir.1984), for the proposition that, while summary proceedings are appropriate to determine the right to possession of receivership property, plenary actions must be filed to decide the ultimate rights to property. See id. at 458-59. However, Arizona Fuels did not present a situation involving the ultimate rights to property. See id. Therefore, any statements in that decision purportedly requiring plenary actions are dicta. Moreover, any exception requiring plenary proceedings applies only to third parties in possession of the disputed property. See id.
 
 
 15
 Even if a plenary proceeding were required, Shaw can prove no due process violation without showing prejudice. Wencke, 783 F.2d at 838. Shaw must show how he was prejudiced by the summary proceeding and how he would have been better able to defend his interests in a plenary proceeding. Id.
 
 
 16
 Shaw claims he was denied an adequate opportunity to: (1) rebut or cross-examine the Receiver's graphology expert; (2) present evidence that his deed was constructively delivered; and (3) present evidence that Murphy's signature was authorized, ratified, or authenticated.
 
 
 17
 Shaw's sole reference to what specific evidence he could have introduced (or on what basis he could have cross-examined the Receiver's expert) is to "copies of two letters from Mr. Murphy and ACI evidencing the validity of Mr. Shaw's deed." What these letters say or show, and why Shaw failed to introduce them at his hearing, are mysteries. Shaw had the opportunity in his moving papers, the hearing, and post-hearing supplemental briefing to establish facts in his support, but he did not do so. Shaw has shown no prejudice from the procedures afforded to him.
 
 
 18
 Two of Shaw's three arguments on lack of opportunity to be heard relate to the signature's authenticity. But the district court did not rest its ruling that Shaw's deed was defective primarily or exclusively on its forgery finding.
 
 
 19
 Rather, the district court found that Murphy and ACI lacked the requisite intent to vest title in Shaw. The district court had already heard Shaw's testimony that Murphy repeatedly promised to record the deed and to send him the original. It obviously discounted this testimony as showing actual intent by Murphy to vest title in Shaw. Shaw offers no new evidence going to intent that would rebut the district court's finding. Without such evidence, Shaw cannot prevail under a constructive delivery theory, or under a constructive or resulting trust. See Part B, supra. In sum, Shaw has not shown how he could have used a plenary proceeding in any way that would have changed the result.
 
 
 20
 We conclude that the district court provided Shaw due process of law.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3