BIGELOW, P. J.,*
Dissenting.—I respectfully dissent. I do not believe plaintiffs have raised a triable issue of fact as to reliance; therefore I would affirm the trial court judgment.
In Kwikset Corp. v. Superior Court (2011) 51 Cal.4th 310 [120 Cal.Rptr.3d 741, 246 P.3d 877] (Kwikset), the California Supreme Court explained that to establish a claim under Business and Professions Code section 17200 et seq.,[1] the unfair competition law (UCL), or section 17500 et seq., the fair advertising law (FAL), as amended by Proposition 64 (Prop. 64), a consumer must plead and prove an “injury in fact” that involves “lost money or property.” (Kwikset, at p. 324.) A plaintiff must show some form of economic injury. (Id. at p. 323.)
In addition, when the case is based on a fraud theory involving false advertising and misrepresentation, the plaintiff must plead and prove “ ‘actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions’ [citation]. Consequently, ‘a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct . . . .’ [Citation.]” (Kwikset, supra, 51 Cal.4th at pp. 326-327, fn. omitted, citing In re Tobacco II Cases (2009) 46 Cal.4th 298, 306, 326, 328 [93 Cal.Rptr.3d 559, 207 P.3d 20].) Similarly, under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA), “ ‘ “plaintiffs . . . [must] show not only that a *924 defendant’s conduct was deceptive but that the deception caused them harm.” ’ [Citation.]” (Hale v. Sharp Healthcare (2010) 183 Cal.App.4th 1373, 1386 [108 Cal.Rptr.3d 669].)
The only legally cognizable economic injury plaintiffs in this case allege they suffered was the money they spent on full-priced clothes.[2] Whether or not the store window signs were ambiguous or misleading, it is undisputed that before plaintiffs incurred any economic injury, they learned the clothes they had selected were not 40 percent off. They then changed their purchase decisions, choosing to buy only some of the items they had selected, fully aware they were not discounted.
On these undisputed facts, plaintiffs cannot establish they would not have purchased the items they bought absent the misleading signs, or that because of the misrepresentation they parted with more money than they otherwise would have, or that they believed the 40 percent off representation to be true and in reliance thereon entered into the purchase. (Kwikset, supra, 51 Cal.4th at p. 330; Chapman v. Skype Inc. (2013) 220 Cal.App.4th 217, 231-232 [162 Cal.Rptr.3d 864]; see also Hall v. Time Inc. (2008) 158 Cal.App.4th 847 [70 Cal.Rptr.3d 466] [no causation where plaintiff alleged invoice was misleading but he took no action based on invoice]; Brown v. Bank of America (D.Mass. 2006) 457 F.Supp.2d 82, 89-90 [no causation where, despite any deficiencies in signs on ATMs warning of fees to be charged, customers were notified by “ ‘click through’ ” screen of charges before completing transaction].)
While reliance on the truth of the defendant’s misrepresentation need not be the sole or decisive cause of the plaintiff’s injury, that reliance must be at least a substantial factor in influencing the decision that causes the injury. (In re Tobacco II Cases, supra, 46 Cal.4th at p. 326.) Thus, a consumer similar to plaintiffs in this case may have wanted to buy a Banana Republic, LLC, sweater because she liked the color, the material was desirable, and a misleading sign led her to believe it would be 40 percent off. In that scenario, reliance on the store’s misrepresentation is only one factor that led to the *925 consumer’s decision to hand over money to buy the sweater. But to establish a fraud-based deceptive advertising claim, the consumer must still show that, although the deception was not the only reason she bought the sweater, she in part relied on the truth of the misrepresentation in consummating the transaction. The plaintiff cannot make that showing if, before executing the sale, she knew the representation of a 40 percent discount to be false.
Indeed, “ ‘well-settled principles regarding the element of reliance in ordinary fraud actions’ ” require this conclusion. (Kwikset, supra, 51 Cal.4th at pp. 326-327, quoting In re Tobacco II Cases, supra, 46 Cal.4th at p. 306.) Evidence a plaintiff knows the defendant’s representation is false, before the injury-producing conduct occurs, rebuts a presumption of reliance. (Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 976 [64 Cal.Rptr.2d 843, 938 P.2d 903] [presumption of reliance arises when there is a showing a misrepresentation is material, absent evidence conclusively rebutting reliance].) This principle has often been stated in cases in which the plaintiff conducted an investigation prior to consummating a transaction, and, through the investigation, discovered the falsity of the defendant’s statements.
In such cases, the plaintiff’s claim of reliance fails. “ ‘If after a representation of fact ... the party to whom it was made . . . actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it. Such claim would simply be untrue.’ ” (Oppenheimer v. Clunie (1904) 142 Cal. 313, 319 [75 P. 899], impliedly overruled on another ground in Liodas v. Sahadi (1977) 19 Cal.3d 278 [137 Cal.Rptr. 635, 562 P.2d 316]; see also Maxon-Nowlin Co. v. Norswing (1913) 166 Cal. 509, 512 [137 P. 240] [no recovery by party who has actually learned the truth, and has not relied upon the misrepresentation]; Orient Handel v. United States Fid. & Guar. Co. (1987) 192 Cal.App.3d 684, 694-696 [237 Cal.Rptr. 667]; Elkind v. Woodward (1957) 152 Cal.App.2d 170, 176-179 [313 P.2d 66]; Blackman v. Howes (1947) 82 Cal.App.2d 275, 278-280 [185 P.2d 1019]; Carpenter v. Hamilton (1936) 18 Cal.App.2d 69, 71-72, 75-76 [62 P.2d 1397]; Gratz v. Schuler (1914) 25 Cal.App. 117, 121 [142 P. 899] [if plaintiff tests the truth of representations and discovers “prior to the consummation of the contract that such representations were false, he will not be heard to say that he was deceived by them. We take it that this proposition needs no authority to support it.”].)[3] I would find this long-standing principle applicable to ordinary fraud cases is controlling here.
*926 The majority repeatedly states plaintiffs raised a triable issue of fact on actual reliance because, even though they learned the 40 percent discount did not apply to their items, their embarrassment and frustration led to them feeling pressured to buy clothes at full price anyway. I am aware of no legal authority supporting the proposition that a plaintiffs embarrassment or frustration is relevant to a determination of reliance when the plaintiff knows the true facts before consummating the transaction that causes the injury. Similarly, I see the majority’s “momentum to buy” theory (maj. opn., ante, at p. 921) as both a departure from well-settled principles regarding reliance in ordinary fraud actions and as a dilution of the Prop. 64 requirement that the plaintiff suffer economic injury as a result of the defendant’s improper conduct.
I also do not believe the majority’s momentum to buy analysis can be applied consistently, while adhering to principles of reliance in ordinary fraud actions. For example, as I understand the majority’s reasoning and momentum to buy theory, any of the following scenarios could arguably establish actual reliance so long as the consumer is drawn into the store by a misleading discount advertisement: (a) a consumer is told as soon as he picks up an item in the store that it is not in fact discounted. He is frustrated or embarrassed and buys the item anyway; (b) a consumer learns the “true price” when he is in line to buy the item, but not yet at the front of the line; (c) a consumer, upon learning at the cash register that the discount will not apply, is not too embarrassed or frustrated to simply walk away from the sale. However, she decides she wants one of the items she selected, even at full price, and therefore buys it; or (d) a consumer is at home shopping on the Internet when she sees a misleading advertisement for a 40 percent discount at an online retailer’s website. She visits the site and places items in her online shopping cart, only to learn right before she clicks “buy” that the items in her cart are not, in fact, 40 percent off.
I expect the court’s decision will invite exhaustive litigation as parties attempt to work out just how little momentum to buy is required to establish actual reliance. Rather than opening the door to suits that veer ever farther away from establishing actual reliance, this court should adopt the bright-line rule that if the plaintiff learns the “truth” about an item’s price before executing a purchase, he or she cannot establish actual reliance on a misleading price advertisement.[4]
*927 The majority suggests a finding of no reliance in this case would go too far in limiting consumers’ standing to bring claims seeking redress for “bait and switch” schemes. As an initial matter, I note this case does not represent a classic bait and switch scheme. A classic bait and switch involves the advertisement of a product the merchant does not actually intend to sell. “The trick is to lure the prospective ‘sucker’ and then overwhelm him with glib salesmanship. The essence of this practice is that the seller really has no intention of delivering the product advertised.” (Hawaii Community Federal Credit Union v. Keka (2000) 94 Haw. 213 [11 P.3d 1, 15]; see Wyatt v. Union Mortgage Co. (1979) 24 Cal.3d 773, 779, 785 [157 Cal.Rptr. 392, 598 P.2d 45] [describing as bait and switch advertising television advertising campaign in which bank represented a $1,000 loan could be repaid in full for $18 per month, but no such loan was actually available].)
In a classic bait and switch, the merchant actively conceals the fact of the misrepresentation from the consumer, resulting in the consumer buying an item he did not enter the store to purchase. Further, the consumer continues to rely on the merchant’s misrepresentations through the consummation of the purchase of the “unwanted” item, believing the advertised item is not actually available, or that it is inferior in a meaningful way to the item the merchant actually wants to sell to reap greater profit margins.
In such schemes, the consumer’s awareness that she or he is buying a product different from what was advertised does not necessarily mean the consumer has ceased relying on the merchant’s continuing deception regarding the advertised product. In contrast, here, there was no evidence any salesperson attempted to convince plaintiffs to purchase items they did not want. Everything about the allegedly misleading 40 percent off sale sign was revealed to plaintiffs before they consummated their purchases. I therefore disagree that any decision in this case is necessarily applicable to other bait and switch cases.
*928 However, I accept that the facts of this case present what could be described as a version of a bait and switch scheme. I am sympathetic to the concern that a finding that a plaintiff cannot establish actual reliance under the circumstances presented here will allow some misleading advertising claims to go unprosecuted. Yet, I do not believe the law as it stands permits any other conclusion.
Under the language of section 17204 as amended by Prop. 64, and the California Supreme Court’s interpretation of the law, actual reliance is required. To have standing, plaintiffs must suffer concrete economic injury as a result of the defendant’s allegedly misleading or deceptive conduct. (Californians for Disability Rights v. Mervyn’s, LLC (2006) 39 Cal.4th 223, 228 [46 Cal.Rptr.3d 57, 138 P.3d 207]; Hall v. Time Inc., supra, 158 Cal.App.4th at pp. 853-854.) Based on the relevant authorities, I can only understand this rule as requiring that the plaintiff establish he believed the defendant’s representation was true and, in reliance on that representation, the plaintiff consummated the transaction that is the source of the economic loss. In my view, only a legislative change may create an exception to this rule.
As stated in Kwikset, “a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant’s statement, not merely on the fact it was made.” (Kwikset, supra, 51 Cal.4th at p. 327, fn. 10.) Our high court has explained that amended section 17204 should be applied in accordance with ordinary fraud principles. In an ordinary fraud case, if the plaintiff learns the relevant true facts before engaging in the conduct that causes the alleged injury, he cannot prove reliance on the deception. The economic harm here was that plaintiffs paid full price for the clothes they bought. As a result, we must ‘“isolate” the point in time at which money was exchanged because that is the moment at which plaintiffs were injured in a legally cognizable way under the consumer protection laws. Plaintiffs knew the relevant true facts before they paid full price. They cannot establish their reliance on defendant’s deception caused their injury.
For these reasons I would affirm the trial court judgment.
Respondent’s petition for review by the Supreme Court was denied March 29, 2017, S239685.

Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

 All further undesignated statutory references are to the Business and Professions Code. Section 17204 provides, in relevant part: “Actions for relief pursuant to this chapter shall be prosecuted ... by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.” Section 17535 includes similar language.

 To the extent plaintiffs claim their economic injury consisted of lost opportunity costs and time, they have cited no legal authority supporting the claim that such harm alone is sufficient to establish standing in a UCL or FAL claim. As noted in Troyk v. Farmers Group, Inc. (2009) 171 Cal.App.4th 1305 [90 Cal.Rptr.3d 589]: “Whereas a federal plaintiff’s ‘injury in fact’ may be intangible and need not involve lost money or property. Proposition 64, in effect, added a requirement that a UCL plaintiff’s ‘injury in fact’ specifically involve Tost money or property.’ ” (Id. at p. 1348, fn. 31; see §§ 17204, 17535.) Despite arguing, pursuant to Meyer v. Sprint Spectrum L.P. (2009) 45 Cal.4th 634 [88 Cal.Rptr.3d 859, 200 P.3d 295], that certain types of transaction costs and opportunity costs may constitute “any damage” under the CLRA, plaintiffs failed to proffer any evidence creating a triable issue of fact as to whether they suffered any such transaction or opportunity costs as a result of the store’s allegedly deceptive conduct.

 There are exceptions to this rule, none of which apply here. (See, e.g., Jue v. Smiser (1994) 23 Cal.App.4th 312, 316-318 [28 Cal.Rptr.2d 242] [real property transaction in which plaintiff is misled at inception of transaction, enters purchase contract, learns of fraud while property is in escrow, and still closes escrow; plaintiff may still establish reliance to support fraud claim, as permitted by Civ. Code, § 3343]; Brownlee v. Vang (1965) 235 Cal.App.2d 465, 474—476 [45 *926 Cal.Rptr. 458] [if plaintiff suspects deception but defendant reassures plaintiff there has been no fraud, plaintiff may still establish reliance]; Blackman v. Howes, supra, 82 Cal.App.2d at p. 279 [accord].)

 In a variety of consumer protection contexts, a plaintiff’s actual or imputed knowledge of the falsity or misleading character of a defendant’s statement or conduct has been a factor in defeating claims based on the defendant’s allegedly misleading or deceptive conduct. (See, e.g., Chern v. Bank of America (1976) 15 Cal.2d 866, 873-874 [127 Cal.Rptr. 110, 544 P.2d *927 1310] [knowledge of actual method of computing interest defeated claim of damages for breach of contract]; Hall v. Time Inc., supra, 158 Cal.App.4th at pp. 857-858 [despite invoice that suggested payment was due before expiration of free-trial period, plaintiff did not act based on invoice or pay for book before free-trial period expired; no sufficient allegation of causation]; Wayne v. Staples, Inc. (2006) 135 Cal.App.4th 466 [37 Cal.Rptr.3d 544] [despite order form that may have been ambiguous as to whether customers would be charged certain surcharge, form was not misleading because customers were clearly informed of actual price before purchase]; Plotkin v. Sajahtera, Inc. (2003) 106 Cal.App.4th 953 [131 Cal.Rptr.2d 303] [failure to have posted sign of valet parking charges was not unfair' business practice since customers were given parking ticket that clearly displayed charges]; South Bay Chevrolet v. General Motors Acceptance Corp. (1999) 72 Cal.App.4th 861 [85 Cal.Rptr.2d 301] [interest computation was not deceptive or misleading business practice where plaintiff, a sophisticated business, was aware in advance of how interest would be calculated]; Brown v. Bank of America, supra, 457 F.Supp.2d at p. 89 [no causation related to defective notice of charges on ATMs because screen requiring customer consent before charges were imposed broke chain of causation].)