[Civ. No. 8440.   Third Dist.   Nov. 5, 1954.]

JOE PAVLOVICH et al., Appellants, v. JOSEPH NEID-HARDT et al., Respondents.

Gallagher, Ruffo & Rainville for Appellants.

Kasch & Cook for Respondents.

VAN DYKE, P. J.—On September 20, 1950, Joseph and Clarice Neidhardt entered into a written agreement with Dorothy and Joe Pavlovich to purchase from them real property in Mendocino County consisting of land upon which there was an operating motel.  The written contract recites a purchase price of $27,500 and a down payment of $6,500. It required installment payments of $200 per month, applicable first to interest at 6 per cent on the unpaid balance, and the rest to principal.  The buyers made one monthly payment and no more.  The sellers brought this action to cancel the buyers' rights in the property.  The buyers answered and cross-complained.  By their cross-complaint they alleged that fraud had been perpetrated upon them in the sale of the property to them and they asked that they have

judgment for $9,500, the alleged amount of damage, and that this amount be deducted from the purchase price of the property. The contract provided that when the price had been paid down to $18,000 the sellers should convey the property to the buyers, and the buyers should give the sellers their note for the balance, secured by a deed of trust upon the property, so the buyers asked that, with the credit of $9,500 damages, the court should enforce their right to have the property conveyed under the contract on condition that they execute their note and deed of trust for such balance as might remain. After trial, the court found that the buyers had been defrauded and fixed their damages therefrom at $7,500. The court decided that the damages for fraud should be set off against the original purchase price of $27,500, reducing the same to $20,000; that after deducting the down payment of $6,500 and the payment of $200 made in October of 1950, there was a balance of $13,300 unpaid on the purchase price; that under the terms of the agreement between the parties cross-complainants were entitled to a grant deed to the property conditioned upon their giving a note for the balance to the cross-defendants, secured by a deed of trust; that interest should not commence to run under said note until the deed had been executed and delivered. Judgment in accordance was entered and therefrom the sellers appeal.

Appellant states the question presented on appeal as follows: "Bearing in mind that the Trial Court affirmed the contract in question, did the Trial Court err in failing to allow as a credit toward damages the interest accrued on the unpaid balance of principal from October 20, 1950 [the date the contract was executed], to July 7, 1952, the date of Judgment?" We hold that the trial court did so err.

As declaring the remedies open to a vendee who has been defrauded, we quote the following from *Paolini* v. *Sulprizio,* 201 Cal. 683, 685-686 [258 P. 380] :

". . . One is rescission, whereby, upon the discovery of the fraud, he repudiates the contract, offers to return what he has received, and seeks a restoration to his original position, claiming whatever damage he may have suffered by reason of the unconscionable conduct of the other party; or, two, he may affirm the contract, retain what he has received, and sue for his damages in an action for deceit. . . .

"In harmony with this principle, which permits the buyer to retain the property and bring suit for the recovery of the damages which he has sustained, there is a third course open

to a defrauded vendee. He may set up the seller's fraud as a partial defense or counterclaim without any offer of restitution, and recoup his damages in the action brought by the guilty party to the contract. . . . This remedy has been styled 'defensive relief,' whereby the fraud is set up by way of defense to defeat an action brought to enforce an apparent obligation or liability."

We take the following from *Kent* v. *Clark*, 20 Cal.2d 779, 783 [128 P.2d 868, 142 A.L.R. 576]:

"Two distinct remedies are open to a vendee who has been induced to enter into the contract of purchase by the fraudulent representations of his vendor. Notwithstanding the vendor's fraud, he may elect to affirm the contract, retain the property received under it and sue the vendor for damages in an action for deceit. Having chosen that course upon the discovery of the vendor's fraud, the vendee need not continue performance but may properly withhold payments under the contract in an amount necessary to recoup the damages which he has suffered. In other words, because of the vendor's fraud, he may avoid the obligation stated by the contract and excuse what would otherwise be a default."

In this case the buyers elected to affirm the contract and to urge their claim for damages by way of defensive relief to the action brought by the sellers to cancel the contract for their default. It is apparent that when a buyer so elects he runs considerable risk if he stops performing his contract for he has at that time no more than a cause of action to recover damages for deceit and neither the right to so recover, nor the amount of that recovery, if he proves his right, has been adjudicated. If, therefore, he ceases to perform under an executory contract which calls for installment payments, he runs the risk that if he fails to establish his right to damages, however the adjudication of that right comes before a court, he may find himself, at the termination of the litigation, deeply in default. This is so because he has affirmed the contract and has agreed to perform it according to its terms. This means that the buyers in this case agreed to pay $200 per month from the date of the contract and to apply that upon principal, and agreed interest. As against these accruing sums of principal and interest the buyers had no liquidated obligation which they could offset until judgment was rendered herein. Conversely, when the judgment was rendered the sellers, since the installments accrued under the contract were less than the amount awarded for fraud,

had no right to offset against the amount awarded anything more than the sums accrued and due them by the contract. (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 763-764 [192 P.2d 935].) Said the court in that case:

". . . Appellant [the seller] complains because the damages are set off against the first payments to become due on the real property note instead of against the last payments. It is clear, however, that the award of damages on the cross-complaint was payable immediately, whereas under the terms of the note appellant had an immediate right only to such payments as had then become due. Although he was entitled to a set-off with respect to the matured payments, he had no right to a set-off as to payments that were not yet due. (Code Civ. Proc., §§ 438, 440; see 23 Cal.Jur. 232; 47 Am.Jur. 738.)"

What the trial court did here, by applying the damages to the purchase price as of the date of the purchase was to reform the contract to that extent. But this exceeded the remedy to which respondent buyers were entitled. Having been procured by fraud, the contract was not binding upon them unless they chose to make it so. They could repudiate it. But they must repudiate or affirm. They could not reform.

What we have said does not permit the vendor any improper advantage. The affirmed contract provides for the accrual of principal and interest. The buyers, claiming to have been defrauded, were entitled to sue for the damages caused by that fraud, and to ask that to the award when made there be added interest at the legal rate from the date of the contract, at which date their cause of action arose. (Civ. Code, § 3288; *Conger* v. *White,* 69 Cal.App.2d 28 [158 P.2d 415]; *Desmond* v. *Standard Bond & Mortg. Co.,* 91 Cal.App. 201 [266 P. 105]; *Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal.2d 501 [86 P.2d 102].) Whether such interest is to be awarded is left to the discretion of the trier of fact to be exercised in consideration of the circumstances of the case. Here the trial court did not allow interest upon the amount awarded. This must be taken as a determination by the trier of fact that a judgment of $7,500 rendered July 7, 1952, would recompense the buyers for all damages which they had suffered from the fraud without awarding interest from the date of the contract. As of the date of the judgment, therefore, the court should have considered that the parties had mutually offsetting demands as follows: There had accrued upon the contract, interest at the contract rate from the date that the first

payment was due. This first payment paid the contract interest to that date. This interest, calculated to the date of judgment, amounted to $2,146.18. In addition there had accrued upon principal the same amount of principal that would have accrued and been paid had the monthly payments of $200 been made. This accrual of principal to the date of judgment amounted to $2,002.98. The total amount accrued to date of judgment, therefore, amounted to $4,149.16. This sum must be set off against the judgment of $7,500, leaving a balance of $3,450.84, as against which the sellers had no accruals to offset. Accruals of principal and interest upon the contract in accordince with its terms would of course arise month by month and if the buyers' judgment were still unpaid they could make offsets, crediting the accruals against their judgment from month to month. They could, of course, have execution upon the balance of their judgment at any time so long as that balance remained and the judgment less offsets would bear interest at the legal rate.

As to the provision of the contract that when the principal had been reduced to $18,000 the buyers would be entitled to have the property conveyed upon their executing a promissory note for the unpaid balance secured by a deed of trust upon the property, this situation had not arisen at the date of the judgment. The amount of accrued principal paid by offsetting it against the judgment amounted, as above stated, to $2,002.98. The principal remaining after the buyers made their first and only payment was the sum of $20,905. Subtracting $2,002.98 from this balance left unpaid principal of $18,902.02. Those portions of the judgment, therefore, based upon the theory that the balance of the principal as of the date of judgment was less than $18,000 had no place in the judgment. The court was not properly concerned with matters that might arise from the future acts of the parties to the contract.

No new trial of this case is necessary, but for the error the judgment must be modified in accordance herewith. The cause is remanded to the trial court with instructions to enter a judgment in accordance with the foregoing.

Peek, J., and Schottky, J., concurred.