Filed 4/9/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RAM'S GATE WINERY, LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JOSEPH G. ROCHE et al.,<br><br>    Defendants and Respondents. | A139189 & A141090<br><br>(Sonoma County<br>Super. Ct. No. SCV 248416) |

## I.

## INTRODUCTION

Appellant Ram's Gate Winery, LLC (Ram's Gate) bought a property in Sonoma County from respondents Joseph G. and Genevieve Roche (the Roches) upon which it intended to build a new winery. The sellers had agreed in the "Purchase and Sale Agreement" (Purchase Agreement) to disclose facts having a "material effect on the value of the ownership or use of the Property," including geological hazards. After escrow closed, Ram's Gate discovered an active fault trace on the property that substantially increased the cost of development, and it sued the Roches for, among other things, breach of contract. The trial court granted summary adjudication on that cause of action, finding the warranties in the Purchase Agreement merged with the recording of the deed and thus, did not survive the close of escrow. Ram's Gate voluntarily dismissed its other causes of action, and the court awarded the Roches costs and attorney fees.

1

Ram's Gate then appealed both the judgment and the subsequent award of attorney fees and costs.[1]

We conclude the court erred in granting summary adjudication. First, the trial court relied on the wrong legal standard in determining the doctrine of merger extinguished the Roches' contractual duty to disclose geotechnical reports allegedly known by them discussing potentially hazardous seismic conditions on the property. Second, evidence from Ram's Gate's representative, which was admitted into evidence by the court, raised a triable issue of fact as to whether the intent of the parties was to have this duty of disclosure merge with the deed upon escrow closing. Third, Ram's Gate's cause of action for breach of contract accrued at the time of the breach; therefore the Roches' liability for that breach was fixed before escrow closed, even though Ram's Gate was unaware of its right to sue and damages had not yet been incurred. Fourth, even if the doctrine of merger applied in this case, the collateral obligations exception prevented the merger doctrine from extinguishing the disclosure duty. Last, the trial court erred further in deciding as an alternative ground for granting summary adjudication that the buyer had improperly pleaded inconsistent theories of liability (breach of contract and fraud).

Accordingly, we reverse the summary adjudication. Because we reverse the summary adjudication, we also must reverse the award of costs and attorney fees to the Roches.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

In the late 1980's the Roches began work on what would become the Roche Family Winery outside the city of Sonoma on Highway 121. By 2005 the winery had

---

[1] The parties jointly requested this court consolidate the two appeals and deem the appellate briefs filed in case No. A139189 applicable to the cost and attorney fee award challenged in case No. A141090. By order dated November 20, 2014, we ordered the two appeals consolidated for oral argument and decision.

gone bankrupt, and as part of the plan of reorganization under Chapter 11, the property on which the winery was located was put up for sale.

On November 15, 2006, Ram's Gate entered into a Purchase Agreement to buy the Roches' winery property with the intention of building a new, separate winery on it. As part of the agreement, the Roches agreed to provide "[w]ithin ten days of the Effective Date" "written disclosure" of any "information known to Seller" regarding violations of "building, zoning, fire, health, environmental statutes, ordinances or regulations; [and] any known geological hazards; . . . soil reports, . . . geotechnical reports, . . . and all other facts, events, conditions or agreements which have a material effect on the value of the ownership or use of the Property . . . ." (Purchase Agreement, ¶ 10.) Thus, by November 25 the Roches were required to make the disclosures. Ram's Gate then had until December 8, 2006, to inspect the property, during which time Ram's Gate could issue its "written approval or disapproval of the condition of the Property" and would be "entitled to terminate" the Purchase Agreement "solely in [Ram's Gate's] discretion." (Purchase Agreement, ¶ 9.)

Ram's Gate evidently approved the condition of the property and escrow closed on December 14, 2006, with the grant deed being recorded that date. On October 12, 2010, Ram's Gate filed a complaint against the Roches and the brokers involved in the purchase of the property, alleging fraud, negligent misrepresentation and breach of contract. On February 14, 2011, it filed a first amended complaint, which is the operative complaint. The gist of the lawsuit is that the Roches failed to provide information within their knowledge and possession relating to earthquake issues on the property prior to the close of escrow. For the breach of contract cause of action, Ram's Gate relied on paragraph 10 of the Purchase Agreement, the substance of which is quoted above.

Ram's Gate alleges it found out in mid-2007 about the existence of documents relating to an active fault trace on the property, which had been documented in two reports available to the Roches, namely a site plan prepared in 1987-1988 by Victor Conforti, and a geological report prepared by Gene Boudreau in 1987, which both identified a fault or fault trace on the land, and which required the Roches to relocate

3

their winery's building pad from its original planned location in order to provide a 50-foot setback. These reports had been commissioned by the Roches as part of the establishment of their own winery, as required by the county because their property was located in an earthquake zone.

The Roches contend that Ram's Gate knew about the earthquake issues before escrow closed on the property in part due to the Roches' discussion with Ram's Gate principals and agents, and in part due to the presence of the Conforti and Boudreau documents in the county's files, which they assert Ram's Gate either knew or should have known about as part of its due diligence during the inspection period.

Despite this factual dispute, the Roches filed a motion for summary judgment or summary adjudication on December 7, 2012. They claimed summary adjudication of the breach of contract cause of action was appropriate because paragraph 10 of the Purchase Agreement could not, as a matter of law, be enforced against the Roches after the close of escrow. (See Code Civ. Proc., § 437c, subd. (c).) Because the Purchase Agreement did not specifically provide that the warranty relating to disclosures would survive the close of escrow, the Roches claimed its obligations "merged" into the deed and were not actionable after Ram's Gate accepted the deed.

On March 1, 2013, in a 14-page written order, the court granted the Roches' motion for summary adjudication of the breach of contract cause of action on two separate grounds. First, the court held: "According to well settled California Law, a buyer of real property who has been induced to enter into a contract to purchase by fraudulent representations of the seller has two inconsistent remedies," either (1) to affirm the contract, retain the property and sue for an action in deceit; or (2) to rescind the contract for fraud, restore possession to the vendor, and recover the purchase money paid. (*Kaluzok v. Brisson* (1946) 27 Cal.2d 760, 763.) Observing that "[t]hese remedies are inconsistent and Plaintiff cannot do both," the court concluded, "Here, Plaintiff cannot both sue in fraud and sue for damages on the contract."

The court next ruled, " '[W]hen a contract does not provide that the representations and warranties survive the closing of a transaction [. . .] the

4

representations and warranties made in the agreement are treated as extinguished as of the closing date, and cannot thereafter give rise to liability. . . . For a party to be able to sue for a breach of a representation or warranty . . . , it is necessary that those representations and warranties survive the closing. . . . Here, the Agreement expressly provided that certain warranties and disclosures survived escrow (specifically those found in paragraph 23), but did not provide that warranties regarding disclosures and due diligence in paragraph 10 would survive."

Ram's Gate thereafter voluntarily dismissed its fraud and negligent misrepresentation causes of action and instead pursued this timely appeal. Thereafter, the trial court granted motions brought by the Roches seeking attorney fees and costs. Ram's Gate appealed separately from those ruling, which we have ordered consolidated for briefing and decision.

## III.

## DISCUSSION

### A. Legal Standard for Granting Summary Adjudication and the Applicable Standard of Review on Appeal

Summary judgment and summary adjudication provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. (Code Civ. Proc., § 437c, subd. (f)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) A defendant moving for summary judgment or summary adjudication may demonstrate that the plaintiff's cause of action has no merit by showing that (1) one or more elements of the cause of action cannot be established, or (2) there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subds. (f)(2), (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.) This showing must be supported by evidence, such as affidavits, declarations, admissions, interrogatory answers, depositions, and matters of which judicial notice may be taken. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 850, 855; *Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 587.)

5

After the defendant meets its threshold burden, the burden shifts to the plaintiff to present evidence showing that a triable issue of one or more material facts exists as to that cause of action or affirmative defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 850.) The plaintiff may not simply rely on the allegations of its pleadings but, instead, must set forth the specific facts showing the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of material fact exists if, and only if, the evidence reasonably permits the trier of fact to find the contested fact in favor of the plaintiff in accordance with the applicable standard of proof. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

In ruling on the motion, the trial court views the evidence and inferences therefrom in the light most favorable to the opposing party. (*Aguilar*, *supra*, 25 Cal.4th at p. 843; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).) If the trial court concludes the evidence or inferences raise a triable issue of material fact, it must deny the defendant's motion. (*Aguilar*, *supra*, 25 Cal.4th at p. 843; *Saelzler*, *supra*, 25 Cal.4th at p. 768.) But the trial court must grant the defendant's motion if the papers show there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

"We review an order granting summary judgment or summary adjudication de novo. (*Aguilar*, *supra*, 25 Cal.4th at p. 860.) We independently examine the record to determine whether a triable issue of material fact exists. (*Saelzler*, *supra*, 25 Cal.4th at p. 767.) The trial court's stated reasons for granting summary judgment or summary adjudication are not binding on us because we review its ruling, not its rationale. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 . . . ['The sole question properly before us on review of the summary judgment is whether the judge reached the right result . . . whatever path he might have taken to get there . . . .'].)" (*Collin v. CalPortland Co.*, *supra*, 228 Cal.App.4th at p. 588, italics omitted.)

**B. The Doctrine of Merger by Deed Did Not Extinguish the Disclosure Obligation**

The general rule, long recognized in California, is that " 'where a deed is executed in pursuance of a contract for the sale of land, all prior proposals and stipulations are

6

merged, and the deed is deemed to express the final and entire contract between the parties.' " (*Bryan v. Swain* (1880) 56 Cal. 616, 618; *Riley v. North Star Mining Co.* (1907) 152 Cal. 549, 556; *Palos Verdes Corp. v. Housing Authority* (1962) 202 Cal.App.2d 827, 836 [stating rule but recognizing exception "where collateral matters are involved"].) The theoretical basis for the rule is that "the acceptance of the deed is, prima facie, full performance of the contract to convey." (9 Thompson on Real Property (3d Thomas ed. 2011) § 82.13(d), pp. 720-721, fn. omitted (9 Thompson).)

Accordingly, some cases have described the merger doctrine as a specific application of the principle of integration in contracts. (*Roffinella v. Sherinian* (1986) 179 Cal.App.3d 230, 238-239 (*Roffinella*); *Szabo v. Superior Court* (1978) 84 Cal.App.3d 839, 843 (*Szabo*); see Code Civ. Proc., § 1856, subd. (h).) Others have identified its jurisprudential underpinnings in doctrines of waiver or estoppel. (*Smiley v. Read* (1912) 163 Cal. 644, 646-647 [estoppel]; *Burnand v. Nowell* (1948) 84 Cal.App.2d 1, 5 [waiver].) And it has also been described as a specific application of the parol evidence rule. (*Roffinella*, *supra*, at pp. 238-239; *Szabo*, *supra*, at p. 843.) "Given the fact that this area bridges contract law and property law, one should not be surprised to find courts struggling to find a coherent rationale for the rule and its exceptions." (9 Thompson, *supra*, § 82.13(d), p. 726.)

The Roches argue that the subsequent issuance, and Ram's Gate's acceptance, of the deed foreclosed relief based on the Purchase Agreement. Their interpretation is a rigid one in which the parties' antecedent contractual obligations merged into the deed essentially by operation of law.

The trial court adopted the Roches' analysis, supporting its merger ruling by citation to *Herring v. Teradyne, Inc.* (S.D. Cal. 2002) 256 F.Supp.2d 1118 (*Herring*), a case upon which the Roches also heavily rely. As quoted by the trial court, that case stated the rule expansively: "[W]hen a contract does not provide that the representations and warranties survive the closing of a transaction [. . .] the representations and warranties made in the agreement are treated as extinguished as of the closing date, and cannot thereafter give rise to liability." (*Id.* at p. 1127.)

7

We conclude that this statement taken from *Herring* is not controlling in this case, and that *Herring* is not otherwise persuasive. First, we note the well-recognized principle that federal district court decisions are not binding on this court. (*People v. Crittenden* (1994) 9 Cal.4th 83, 120, fn. 3; *People v. Burnett* (2003) 110 Cal.App.4th 868, 882 [lower court federal cases are not binding in matters involving state law].)

Second, the quoted passage relied on by the trial court was dictum because the contract in *Herring* did contain a survival clause. Moreover, the holding in *Herring* that the survival clause represented an agreement of the parties to shorten the applicable statute of limitations was overturned on appeal, with the Ninth Circuit finding "no clear and unequivocal language in the survival clauses that permits the conclusion that the parties have unambiguously expressed a desire to reduce the statute of limitations." (*Herring v. Teradyne, Inc*. (9th Cir. 2007) 242 Fed.Appx. 469, 471; see also *Western Filter Corp. v. Argan, Inc.* (9th Cir. 2008) 540 F.3d 947, 951-954 [reaching result opposite to *Herring*].)

Most importantly, *Herring*'s formulation of the merger rule is overstated. "The rule that prior expressions are merged into the deed is not as broad and absolute as some abbreviated statements of the doctrine might indicate." (*Szabo*, *supra*, 84 Cal.App.3d at p. 843; accord, *Roffinella*, *supra*, 179 Cal.App.3d at p. 238.) Some courts have more appropriately framed the rule: "When a provision in a deed is certain and unambiguous it prevails over an *inconsistent* provision in a contract of purchase pursuant to which the deed was given. [Citations.]" (*Johnson v. Ware* (1943) 58 Cal.App.2d 204, 206, italics added; accord, *Cochran v. Union Lumber Co.* (1972) 26 Cal.App.3d 423, 429.)

In addition to examining the contract and the subsequent deed for inconsistencies, courts also focus on the intentions of the parties. (*Roffinella*, *supra*, 179 Cal.App.3d at p. 239 [" ' "The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement" ' "]; *Szabo*, *supra*, 84 Cal.App.3d at p. 843 [same].) "All courts agree that the starting point in the search for the parties' intent is the language of the deed." (9 Thompson, *supra*, § 82.13(a)(4), p. 704, fn. omitted.)

8

Applying the foregoing principles to the case at bar, we agree with those courts which have limited application of the merger doctrine to circumstances where the contractual terms are *inconsistent* with the deed, or where the parties clearly intend to have all contractual obligations subsumed by the recitals of the recorded deed. This formulation mitigates the potential unfairness resulting from strict application of the merger doctrine.[2] Thus, whether the merger doctrine applies should be decided based on (1) an analysis of the deed in comparison with, and in the context of, the prior contract to discern whether the contractual terms are inconsistent with the deed, and (2) an examination of the parties' intent as to whether the provisions of the prior agreement continue in force after the transfer of title. Applying this alternative formulation of the merger doctrine in place of *Herring*'s oversimplified categorical bar to any claim based on the antecedent contract, we are convinced that the trial court's erred in holding that summary adjudication was proper.

In analyzing whether the contractual provisions at issue are inconsistent with the provisions of the subsequent deed, the deed is correctly described by Ram's Gate as a rather pedestrian instrument addressing only "the mechanics of transferring title" and containing a legal description of the property conveyed. Thus, from the face of the deed itself it appears that not all of the terms that were explicitly intended to survive escrow were "merged" into the deed. There is, in sum, no obvious conflict between the terms of the Purchase Agreement and the terms of the deed which would show that the disclosure warranty was merged into the deed. (*Johnson v. Ware*, *supra*, 58 Cal.App.2d at p. 206; accord, *Cochran v. Union Lumber Co.*, *supra*, 26 Cal.App.3d at p. 429.)

---

[2] The merger doctrine has been subject to significant criticism. (E.g., *A Second Call for Abolition of the Rule of Merger by Deed* (1994) 71 U. Det. Mercy L.Rev. 543, 550.) Commentators have noted that its effects are "harsh." (14 Powell on Real Property (2014) § 81.01[2][d], p. 81-15.) And since 1975 the Uniform Land Transactions Act has proposed total elimination of the doctrine of merger unless the parties specifically mention in their contract that acceptance of a deed will terminate the rights of the purchaser. (13, Pt. II, U. Laws Ann. (2002) Land Transactions, § 1-309, p. 188.)

9

Turning to the parties' intent as to merger, " '[i]t is the duty of the Court to give the deed the same construction that the parties gave it, at the time of its execution. The Court will place itself, as nearly as possible, in the position of the contracting parties, and their intent will be ascertained in the same manner as in the case of any other contract.' [Citation.]" (*Szabo*, *supra*, 84 Cal.App.3d at p. 843.) Looking first to the language of the agreement itself to discern the parties intent, we review de novo whether the contract was unambiguous. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 ["The trial court's ruling on the threshold determination of 'ambiguity' (i.e., whether the proffered evidence is relevant to prove a meaning to which the language is reasonably susceptible) is a question of law, not of fact. [Citation.] Thus the threshold determination of ambiguity is subject to independent review. [Citation.]"].)

The Roches contend on appeal, and the trial court agreed, that paragraph 10 unambiguously expressed the parties' intention that the Roches' duty to disclose did not survive escrow. The Roches construe paragraph 10 so that the "essence and sole purpose of the Roches' disclosure covenants and warranty were to assist Ram's Gate in its due diligence investigation, in furtherance of its purchase of the property." Once Ram's Gate determined to go through with the purchase, the Roches argue, it relinquished any claim for violation of the disclosure obligation or warranty.

The Roches also note that paragraph 23 of the Purchase Agreement specifically provided that the buyer's warranty of authority "shall survive the Close of Escrow and execution and delivery of the Grant Deed and Bill of Sale." By expressly providing for the survival of the warranties described in paragraph 23, while omitting any such provision in paragraph 10, they argue the Purchase Agreement (in the court's words)

10

"evinces a very clear intent of the parties" to make the paragraph 10 warranty non-surviving.[3]

But, disputing this interpretation, Ram's Gate submitted, and the court admitted into evidence, extrinsic evidence concerning Ram's Gate's understanding of the disclosure covenant and warranty. Jeff O'Neill, the "Managing Member" of Ram's Gate, filed a declaration stating, "[P]laintiff understood that these warranties [under Paragraph 10] would continue after close of escrow. There was no agreement that such warranties would be extinguished when the deed was executed and escrow had closed. There was no agreement that the warranties would 'merge' into the deed and be extinguished upon close of escrow." "It was our intention that the provisions in the Purchase and Sale Agreement pertaining to the rights and obligations of the parties, including the seller's warranty that the disclosures of the seller would be provided, would continue after close of escrow. Plaintiff informed defendants."

Despite this evidence the trial court found no ambiguity in paragraph 10 and evidently concluded it was not required to consider O'Neill's declaration in determining the parties' intent. But in addressing this issue, the trial court was obligated to examine the extrinsic evidence proffered and admitted to determine whether the interpretation espoused by its proponent (Ram's Gate) is one to which the contractual provision is "reasonably susceptible." (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 912-913; *Winet v. Price*, *supra*, 4 Cal.App.4th at pp. 1165-1166.) If so, the extrinsic evidence is admissible to interpret the agreement.

Applying the de novo standard of review, we disagree with the trial court's conclusion, and conclude that O'Neill's declaration proposed an interpretation of the Purchase Agreement to which it was reasonably susceptible. The declaration should have been considered in determining the parties' mutual intent on the integration and survival

[3] Paragraph 9 of the Purchase Agreement similarly provided that the indemnity required of Ram's Gate for any damage done as a result of its inspection "will survive the Close of Escrow or termination of this Agreement." Also, in paragraph 13, the parties clearly expressed their intention to have the Roches' obligation to pay their share of the escape assessment taxes survive the close of escrow.

issues. The fact that several paragraphs in the Purchase Agreement specifically provided for their survival does not, as a matter of law, compel the conclusion that no other provision could survive without a similar recital. Thus, the ultimate resolution of the parties' intent is a factual issue that should have been left for trial, and not decided as a matter of law on summary adjudication. (*Morey v. Vannucci*, *supra*, 64 Cal.App.4th at pp. 912-913; *Szabo*, *supra*, 84 Cal.App.3d at p. 841.)

## C. Rams Gate's Breach of Contract Claim Accrued Prior to the Close of Escrow

Finally, as Ram's Gate points out, regardless of whether the disclosure covenant and warranty merged with the deed on closing, the Roches' disclosure obligation arose on November 25, 2006, and was allegedly breached on that same date by their failure to disclose the Conforti site map and Boudreau geological report. Ram's Gate claims the breach occurring prior to the close of escrow gave rise to a cause of action that was not extinguished by the merger doctrine.

We agree and, as an alternative holding, conclude that this alleged pre-closing breach of the Purchase Agreement was not extinguished by the later close of escrow. Although damages had not yet been incurred when escrow closed, given the alleged breach of the Roches' disclosure covenant prior to that date, the cause of action for breach of contract had already accrued, and thus survived the close of escrow. (See *Menefee v. Ostawari* (1991) 228 Cal.App.3d 239, 246 [a cause of action for breach of contract generally "accrues at the time of breach regardless of whether any substantial damage is apparent or ascertainable"]; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 520, p. 664 ["A cause of action for breach of contract ordinarily accrues at the time of breach, . . . regardless whether any damage is apparent or whether the injured party is aware of his or her right to sue."].)

## D. Even If Respondents' Contractual Obligations to Make Disclosures Merged with the Deed, the Collateral Obligations Exception to that Doctrine Applies

"While the merger doctrine is universally accepted, it is only the starting point, inasmuch as the exceptions to the rule are at least as important as the rule itself." (9 Thompson, *supra*, § 82.13(d), p. 721.) A prominent exception to the merger rule

12

exists for contractual provisions that are " 'collateral to the deed.' " (*Stiles v. Bodkin* (1941) 43 Cal.App.2d 839, 843 (*Stiles*); *Mills v. The Richmond Co., Inc.* (1922) 56 Cal.App. 774, 775 (*Mills*).)

Ram's Gate takes the position the "collateral rights" exception applies whenever the disputed provision is "collateral to the deed," rather than collateral to the "sale transaction itself," as argued by the Roches. We agree with Ram's Gate. (*Stiles*, *supra*, 43 Cal.App.2d at p. 843; *Mills*, *supra*, 56 Cal.App. at p. 775.)

"Given the fact that the main function of a deed is to convey title, collateral agreements are usually those matters not related to title." (9 Thompson, *supra*, § 82.13(d), p. 724, fn. omitted.) One commentator has suggested that provisions most clearly merged in the deed are those that are deed-related (i.e., those that "have a close relationship to the function that deeds perform"), including those concerning "title, possession [and] quantities or emblements[4] of the land." (Lawrence Berger, *Merger by Deed—What Provisions of a Contract for the Sale of Land Survive the Closing?* (1992) 21 Real Estate L.J. 22, 32, fn. 41.) Contractual obligations that do not pertain to passage of title are less likely to be subject to the doctrine of merger. (*Id.* at pp. 33-35.)

California courts have broadly interpreted the category of "collateral" promises that survive the close of escrow. (E.g., *Roffinella*, *supra*, 179 Cal.App.3d at pp. 238-239 [sellers' agreement to subordinate their deed of trust to later-acquired construction loan held to survive escrow, even though deed contained no subordination clause]; *Mills*, *supra*, 56 Cal.App. at p. 775 [provisions of antecedent contract to grade streets and install sidewalks and curbs deemed collateral and not merged into deed in part because "one would not expect to see anything on those subjects in a deed"].)

Miller & Starr agree that a decision whether the merger doctrine governs or the collateral terms exception applies must turn on the intentions of the parties, but the merger doctrine must be applied equitably: "[w]hen covenants and warranties in the purchase agreement between the parties are not contained in the deed, whether these

---

**4** "Emblements" are growing crops. (*Cottle v. Spitzer* (1884) 65 Cal. 456, 458.)

13

covenants and warranties survive the deed and remain enforceable or are merged in the deed and become unenforceable against the grantor after the transfer of title only to the extent provided expressly or impliedly by the deed depends on the *intention of the parties as a question of fact*. The court will not find a merger to deprive the parties of their rights under the contract unless it *clearly appears* that they intended such a result *and the result is equitable.*" (3 Miller & Starr, California Real Estate (3d ed. 2011) Deeds, § 8:4, pp. 8-23–8-24, italics added, fns. omitted.)

As we have already discussed, the evidence presented in connection with the summary judgment motion, particularly the O'Neill declaration, directly conflicted with the assertion that the parties intended the Purchase Agreement's disclosure warranty to merge into the deed. Certainly, the text of the deed itself, when compared with the Purchase Agreement, suggests no merger was intended as to paragraph 10.

Moreover, while disputed by the Roches, Ram's Gate claims that it found out about the existence of documents relating to an active fault trace on the property only in mid-2007. These potential seismic problems were documented in the two reports prepared by Conforti and Boudreau, which had been available to the Roches since the late 1980's.

If the fact finder ultimately determines that Ram's Gate's version of the facts is true, it would be inequitable not to apply the collateral promises exception in this case. In this regard, Ram's Gate correctly observes the such inequity would occur because "the trial court's ruling gives the sellers a perverse incentive to breach the contract; if they conceal relevant information despite their warranty, and the buyers don't discover the breach in the limited period before escrow closes, the sellers can reap excess profits without having to worry about future liability."

Nevertheless, the Roches appear to argue that a seller's covenant contained in the Purchase Agreement is "collateral" only if it expressly or impliedly calls for performance by the seller *after* the close of escrow. It is true that collateral obligations often involve contractual provisions calling for future performance by the seller. (E.g., *Roffinella*, *supra*, 179 Cal.App.3d at pp. 238-239 [seller's agreement to subordinate carry back

14

mortgage to a subsequent construction loan required seller's action after close of escrow]; *Stiles*, *supra*, 43 Cal.App.2d at pp. 840, 843 [covenant to construct street improvements contained in separate agreement from sales contract]; *Mills*, *supra*, 56 Cal.App. at p. 775 [seller's agreement to construct sidewalks and curb].) But, while covenants to perform in the future may be those most likely to be considered "collateral," that is not a necessary feature of collateral agreements.

For example, in *Szabo*, *supra*, the California case most closely analogous to ours, a warranty in a purchase and sale agreement that the property was properly zoned for four rental units was enforced despite the fact that no such warranty appeared in the deed. (84 Cal.App.3d at pp. 841-842.) The court summarized its holding this way: "At issue is whether a buyer of real property may enforce a warranty contained in the agreement for sale notwithstanding the absence of any reference to it in the grant deed that conveyed title. We have concluded that the deed does not necessarily preclude enforcement, and that the trial court erred in making a pretrial order summarily adjudicating that issue against plaintiffs." (*Id.* at p. 841.)

For all of the reasons discussed above, the trial court erred in concluding that, as a matter of law, the merger doctrine precluded Ram's Gate from prosecuting a claim for breach of the Purchase Agreement.

## E. Pleading Inconsistent Remedies Is Not a Ground for Granting Summary Adjudication

As noted above, the trial court also grounded its ruling on the notion that a cause of action to enforce contractual obligations is inconsistent with a cause of action alleging fraud, and that Ram's Gate may not pursue both causes of action. The Roches argue this rationale on appeal, as well, relying on *Kaluzok v. Brisson*, *supra*, 27 Cal.2d at p. 763 [change of venue]; *Paolini v. Sulprizio* (1927) 201 Cal. 683, 685-686 [fraud may be set up as a defense against payment of remainder of purchase price]; *Stiles*, *supra*, 43 Cal.App.2d at p. 844 [statute of limitations and laches do not apply to fraud claim asserted only defensively]; *Pavlovich v. Neidhardt* (1954) 128 Cal.App.2d 559, 560-561 [defrauded buyers could not offset their damages against purchase price of property, but

15

must offset it against amounts due under the contract, including accrued interest]).  These cases deal with the methods by which relief can be had for fraud in relation to the purchase of real property, noting that the defrauded buyer must elect whether to rescind the contract or to affirm it and seek damages.  They do not speak to the question whether a cause of action also may be alleged for breach of warranty in such circumstances.  We see no reason why such an action cannot be maintained.  (*Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 565 ["A plaintiff may plead cumulative or inconsistent causes of action."].)

Moreover, as pointed out by Ram's Gate, any obligation it might have to elect one of two inconsistent remedies would not arise prior to trial; an election of remedies is required only after a decision on the merits and prior to entry of judgment.  (See *Jahn v. Brickey* (1985) 168 Cal.App.3d 399, 406 [rejecting argument that election of remedies must be made prior to submission of case to jury]; *Roam v. Koop* (1974) 41 Cal.App.3d 1035, 1039 ["Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial prior to judgment."].)

For these reasons, we also reject the alternative ground articulated by the trial court for granting summary adjudication.

## IV.

## DISPOSITION

The order summarily adjudicating the breach of contract cause of action is reversed.  Because we reverse the judgment we also reverse the trial court's award of attorney fees and costs to the Roches.  The case is remanded to the trial court for further proceedings consistent with this opinion.  Costs on appeal are awarded to Ram's Gate.

 

 

 

_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.


A139189 & A141090, *Ram's Gate Winery, LLC v. Roche*

Trial Court:                          Sonoma County Superior Court

Trial Judge:                          Hon. Elliott Daum

Counsel for Appellant:                Arnold & Porter, Steven L. Mayer,
                                      Sean M. SeLegue

Counsel for Respondents:              Beyers | Costin, Bob Haroche,
                                      Peter L. Simon

A139189 & A141090, *Ram's Gate Winery, LLC v. Roche*