Filed 2/18/16  Akin v. Duro-Last CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JEANNE AKIN et al., | |
| Plaintiffs and Appellants, | E062898 |
| v. | (Super.Ct.No. INC1207885) |
| DURO-LAST, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge. Affirmed.

John L. Dodd & Associates, John L. Dodd; Darryl J. Paul for Plaintiffs and Appellants.

Tucker Ellis, Anthony D. Brosamle, Rebecca A. Lefler, and Jenny-Anne S. Flores, for Defendant and Respondent.

This case arises from a leaky roof on a commercial building in Palm Desert, California, owned by plaintiff and appellant Jeanne Akin (Akin).  Akin is the sole owner of plaintiff and appellant Hillis Furs (Hillis or, collectively with Akin, plaintiffs), a

1

garment business that is a tenant in the building. Defendant and respondent Duro-Last, Inc. (Duro-Last) manufactured the roofing membrane installed on the building in 2001 by a nonparty contractor. The trial court granted summary judgment in favor of Duro-Last, finding plaintiffs' claims to be time-barred. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The roof at issue was installed in 2001 by nonparty Broken Arrow General Contracting and Roofing (Broken Arrow), using a roofing system manufactured by Duro-Last. The roof was covered by a 15-year warranty, issued by Duro-Last to Akin, which Akin executed on February 6, 2002.[1]

Plaintiffs allege that since installation of the Duro-Last product, the roof has leaked five times: November 2001, November 12, 2003, October 17, 2005, December 1, 2007, and July 31, 2012. After the November 2001 leak, Akin reached a settlement agreement with Broken Arrow. In March 2005, Akin brought suit against Broken Arrow, seeking to recover damages arising from the November 2003 leak; the October 2005 leak occurred while that litigation was pending. That litigation was settled in July 2007.

During the course of her litigation with Broken Arrow, an expert hired by Akin's attorney advised that, to fix leakage problems in the roof arising from poor drainage and standing water collecting on the roof—caused by a combination of poor design of the

---

[1] The question of whether the warranty was in place when the roof was installed in 2001, or only when Akin signed the warranty document, dated February 6, 2002, is a matter of some dispute between the parties. Resolution of that dispute, however, is not necessary for disposition of the present appeal.

original roof deck and improper installation of the Duro-Last product—the roof would have to be replaced.

Also during the course of the Broken Arrow litigation, Akin's attorney requested that Duro-Last's Quality Assurance Regional Manager, Richard Hebner (Hebner), examine the roof and document his observations. Hebner did so, in a letter dated September 11, 2006. He observed a number of relatively minor issues, noting that some of them "impact the Duro-Last membrane and need to be repaired by an authorized Duro-Last contractor/dealer," while others need to be "addressed by the appropriate service personnel." Akin also declared that she had spoken to Hebner personally; he had assured her that the roof was "perfectly fine" and did not have to be replaced. Akin contends that she was told by Hebner and unnamed "others" from Duro-Last that "a swimming pool full of water could lay up on that roof without any damage to anything," at least once the relatively minor issues noted by Hebner were fixed, because "the Duro-Last product will hold that water without leaking."

Around the same time as Hebner's visit to the property, Akin also spoke personally with another Duro-Last employee, a "Technical Representative" named Vince Gardner (Gardner), who inspected the roof on August 10, 2006. Gardner told Akin that the only way to eliminate the possibility of future leaks was to replace the roof. According to Akin, Gardner told her that his supervisor did not believe the roof needed replacement, but that if the roof ever leaked again, she should have the roof replaced.

3

Also in 2006, a roofing contractor named Craig Perry (Perry), of the company Perry & Sons Roofing, came to the property to inspect the roof and address the items identified in Mr. Hebner's letter. Perry did not tell Akin that correction of the issues identified in Hebner's letter would mean the roof would not leak anymore; to the contrary, he advised that the entire roof should be removed and replaced, to solve the problems of improper drainage and slope of the roof.[2]

Akin did not have the roof replaced, but instead had Perry fix the specific issues identified by Hebner, and subsequently perform maintenance on the roof approximately twice a year. In 2009, at Perry's suggestion, Akin had Perry install two sump pumps on the roof "to help relieve the water load on the roof due to lack of drainage and proper sloping." Perry continued to advise, however, that the roof "needed to be removed and replaced" to be "a hundred percent sure" that there would be no further water intrusion.

With respect to the December 2007 leak, Akin did not recall whether any garments had been damaged in her business. She testified that Duro-Last was "made aware" of that incident, and indeed "each and every leak."

The most recent leak, giving rise to the present lawsuit, is alleged to have occurred on July 31, 2012. Akin was out of town, but returned on August 1, 2012, to discover "[t]here was water everywhere." She contends that the leaking roof resulted in water intrusions causing "millions of dollars in damage to the building and its contents."

---

[2] Plaintiffs suggest in their briefing on appeal that there is some question as to when Mr. Perry first advocated for removal and replacement of the roof. There is not, as demonstrated by Akin's own declaration.

4

The present lawsuit was filed on November 8, 2012. The operative second amended complaint (complaint) asserts five causes of action: (1) breach of warranty; (2) breach of contract; (3) negligent misrepresentation; (4) intentional misrepresentation; and (5) negligence. The first and second causes of action are asserted by Akin alone, while the remaining causes of action are asserted by both plaintiffs. The intentional misrepresentation claim was, apparently, dismissed with prejudice by stipulation of the parties, though this stipulation does not appear in our record.

Duro-Last's motion for summary judgment was filed on July 17, 2014. The trial court heard the motion on October 14, 2014, and took the matter under submission. The court's written order granting summary judgment in favor of Duro-Last on statute of limitations grounds, issued on October 20, 2014.[3]

## II. DISCUSSION

**A. Standard of Review.**

Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. A defendant meets its burden on summary judgment by showing that the plaintiff cannot prove its causes of action, or by establishing a complete defense to the plaintiff's

---

[3] The trial court also found that plaintiffs' third cause of action for negligent misrepresentation failed because plaintiffs could not, as a matter of law, show reasonable reliance on the alleged misrepresentations.

5

causes of action. (Code Civ. Proc., § 437c, subd. (p)(2).) The burden then shifts to the plaintiff to show a triable issue of fact material to the causes of action or defense. (*Ibid.*)

We evaluate a summary judgment ruling de novo, independently reviewing the record to determine whether there are any triable issues of material fact. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) "In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment." (*Distefno v. Forester* (2001) 85 Cal.App.4th 1249, 1258.) In general, we give no deference to the trial court's ruling or reasoning, and only decide whether the right result was reached. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

**B. Analysis.**

Duro-Last contends that each of plaintiffs' asserted causes of action is barred by the applicable statute of limitations. We agree.

The statute of limitations for breach of warranty claims is four years, accruing "'when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." (*Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297, 1306, quoting Cal. U. Com. Code, § 2725.)

The latest date when Akin's breach of warranty cause of action could have accrued is December 1, 2007, when the roof leaked again, even though the fixes

6

suggested by Hebner had been implemented by Perry.[4]  At that point, Akin knew or should have known that the repairs had been ineffective, and Duro-Last would have to further repair or replace the roof to make good on its warranty.  Even though Duro-Last did not do so, Akin did not bring suit until nearly five years later, after the applicable four-year statute of limitations had lapsed.

Akin suggests that it is "unclear whether [the December 2007 leak] would put a reasonable person on notice Hebner's recommendations were incorrect."  We disagree.  A reasonable person in Akin's circumstances—having previously suffered damages from leaks in the roof, and now finding another, even relatively minor leak—should know that the repairs previously performed were likely inadequate, and further repairs were likely necessary for Duro-Last to make good on its warranty.[5]  When Duro-Last subsequently failed or refused to repair the roof, despite being informed of the leak, Akin's breach of

---

[4]  Arguably, the cause of action accrued earlier, in 2006, when Hebner allegedly refused the advice of Gardner and Perry that the roof needed to be replaced to fix the problem properly, or, as defendants argue, when the roof first leaked, in 2001, or on the date of the 2003 leak at the latest.  Indeed, the complaint specifically alleges that Duro-Last breached the warranty when it refused to replace the roof in 2006.  Given the date plaintiffs brought suit, however, these are arguments we need not resolve.

[5]  Akin's testimony that she did not "'know what the cause was'" of the leak, and speculation that the leak "could have been a minor leak in an entirely different portion of the roof, not raising any suspicion on Akin's part" does not change this analysis.  Any reasonable person's suspicions would have been raised, even if Akin's were not.  As such, this case is distinguishable from *Oakes v. McCarthy Co.* (1968) 267 Cal.App.2d 231, a case about soil subsidence that did gradual damage to a house, on which plaintiffs rely.

7

warranty claim was ripe for adjudication, and the statute of limitations began to run.[6]

And the limitations period expired well before plaintiffs brought suit in November 2012.

Similar analysis leads to the same conclusion with respect to plaintiffs' other claims. The contract at issue in Akin's breach of contract claim is the warranty, and she explicitly alleges that the contract breach occurred when Duro-Last refused to replace the roof in 2006. A cause of action for breach of a written contract is governed by a four-year statute of limitations (Code Civ. Proc., § 337), and "generally 'accrues at the time of breach regardless of whether any substantial damage is apparent or ascertainable.'" (*Ram's Gate Winery, LLC v. Roche* (2015) 235 Cal.App.4th 1071, 1084.) Plaintiffs' negligent misrepresentation claim is based on Hebner's September 2006 letter; plaintiffs knew or should have known of the falsity of the alleged misrepresentations when the roof leaked in December 2007, when the roof leaked again, even though Hebner's suggested fixes to the roof had been implemented. Negligent misrepresentation claims are governed by a three-year statute of limitations, accruing upon "the discovery, by the aggrieved party, of the facts constituting the fraud . . . ."[7] (Code Civ. Proc., § 338, subd.

---

**6** Akin's deposition testimony is vague about when, precisely, she discovered the alleged December 1, 2007, leak. Nevertheless, Akin did not plead facts, or introduce evidence, suggesting that the leak was not discovered soon after it happened.

**7** In some circumstances a two-year statute of limitations has been applied to negligent misrepresentation claims. (Compare *Ventura County Nat. Bank v. Macker* (1996) 49 Cal.App.4th 1528, 1530-1531 [applying two-year statute of limitations] with *Broberg v. The Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 920 [applying three-year statute of limitations].) Here, Duro-Last asserts, and plaintiffs have not disputed, that the three-year statute of limitations of Code of Civil Procedure, section

*[footnote continued on next page]*

(d).)  According to the complaint, plaintiffs' negligence claim is based on alleged failure to "exercise reasonable care in manufacturing and designing the roofing system" and "defectively or incompletely providing the roofing system," which was installed in 2001. But even if it were based on purported negligence related to the 2007 repairs to the roof, rather than the initial installation, plaintiffs brought suit only well beyond the applicable limitations period of three years.[8]  (Code Civ. Proc., § 338, subds. (b), (c).)

Akin argues that the accrual date of her claims could be no earlier than July 31, 2012, because she suffered no damage before that date.  Not so.[9]  As of 2007, Akins had suffered the appreciable harm of having a roof on her building that not only was potentially subject to leaks, but actually had leaked again, despite attempted repairs, giving rise to claims for at least the cost of further repairing or replacing the roof.  As such, this case is distinguishable from case law on which plaintiffs rely, involving

_____

*[footnote continued from previous page]*
338, subdivision (d), applies to plaintiffs' negligent misrepresentation claim.  In any case, the result is the same applying either limitations period.

[8]  Defendants incorrectly cite Code of Civil Procedure section 335.1 or former Code of Civil Procedure section 340, subdivision (3) as the applicable limitations statutes.  Those are limitations periods for personal injury actions, not actions for injury to personal property.

[9]  We acknowledge Duro-Last's argument that this point was waived, because it was not properly raised below.  We find it more expedient to address the issue on the merits than to decide the waiver issue.

circumstances where no appreciable harm had occurred until long after an earlier alleged breach.**10**

We also reject plaintiffs' argument that Duro-Last must be equitably estopped from raising statute of limitations defenses to their claims. To assert equitable estoppel, a party must allege some conduct on the part of the defendant that induced inaction. (*Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152-1153.) Nevertheless, "[w]hen a substantial period for instituting an action supervenes after expiration of the delay engendered by a party, his conduct, representations, or promise will not estop him from asserting the bar of the statute. . . . The statute becomes operative when the aggrieved party discovers the fact on the existence of which the cause of action accrues. [Citations.] Where the inducement for delay has ceased to operate, the plaintiff cannot excuse his failure to institute his action on the ground of estoppel." (*Regus v. Schartkoff* (1957) 156 Cal.App.2d 382, 387 (*Regus*).)

---

**10** It is important to note that plaintiffs have made no explicit argument, either on appeal or in the trial court, distinguishing between damages suffered by Hillis specifically and damages suffered by Akin in her capacity as owner of the building in which Hillis is a tenant. As such, we need not consider whether Hillis's causes of action might have accrued only after the 2012 leak did extensive damage to the business, even though Akin's causes of action asserted in her capacity as building owner accrued no later than December 2007. (See *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived."].) Similarly, we need not and do not address plaintiffs' arguments on appeal based on "the continuous accrual doctrine" or the "future performance exception," issues which they did not raise in the trial court. (See *Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 73 ["Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived."].)

Here, plaintiffs base their estoppel arguments on alleged statements by Hebner (and "other Duro-Last representatives") to the effect that "a swimming pool of water could lay up on that roof without any damages to anything" because "the Duro-Last product will hold that water without leaking." At the same time, however, plaintiffs allege that, even after Hebner's suggested fixes were implemented, the roof leaked again, revealing the falsity of the alleged assertions about the integrity of the roof. As such, any "inducement for delay" had "ceased to operate" at that point. (See *Regus*, *supra*, 156 Cal.App.2d at p. 387.) Put another way: The doctrine of equitable estoppel only applies if "the plaintiff proceeds diligently once the truth is discovered." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 384.) Here, Akin did not proceed diligently, but instead delayed five years to bring suit, after discovering the roof continued to leak. Equity therefore does not require Duro-Last to be estopped from asserting statute of limitations defenses in this circumstance.

We need not and do not reach the parties' arguments regarding the scope of the settlement in the Broken Arrow litigation, or whether plaintiffs' negligent misrepresentation claim also should fail for lack of reasonable reliance. Instead, we affirm the trial court's grant of summary judgment to Duro-Last, because each of plaintiffs' asserted causes of action are barred by the applicable statute of limitations.

11

## III. DISPOSITION

The judgment is affirmed.  Duro-Last is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


           HOLLENHORST
                                   J.

We concur:


RAMIREZ
                    P. J.

MCKINSTER
                    J.