Filed 12/22/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TALIA SHAYLA ALEXIS WISE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TESLA MOTORS, INC.,<br><br>        Defendant and Appellant. | A170983<br><br>(Alameda County<br>Super. Ct. No. 23CV046673) |

Defendant Tesla Motors, Inc. (Tesla) appeals from an order denying its motion to compel arbitration of the claims of plaintiff and respondent Talia Shayla Alexis Wise.  In denying the motion, the trial court found that the parties' arbitration agreement should be read together with their nondisclosure agreement.  (Civ. Code, § 1642.)[1]  Finding that the nondisclosure agreement contained unconscionable terms and that the unconscionability permeated the agreement to arbitrate, the court concluded that the arbitration agreement could not be enforced.  On appeal, Tesla argues that:  (1) section 1642 is preempted by the Federal Arbitration Act (9 U.S.C. § 1; FAA); (2) the parties' agreements should not be read together under section 1642; (3) if read together, the terms of the agreements are not unconscionable; and (4) if any terms are unconscionable, they should have been severed so the arbitration provisions could be enforced.

_____

[1] Except where otherwise indicated, statutory references are to the Civil Code.

1

Although we disagree that the FAA preempts section 1642, we agree that the trial court should have severed the allegedly unconscionable terms and enforced the arbitration agreement. Those terms applied to all proceedings, and not just arbitrations, and had no bearing on the causes of action that Wise asserted. Nor did they threaten the arbitration procedure itself. The terms were therefore collateral to and severable from the arbitration agreement, and the interests of justice favored enforcement of the parties' agreement to arbitrate. Accordingly, we reverse without reaching the other two arguments raised by Tesla.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Parties' Agreements

As relevant here, the parties entered into two agreements in connection with Wise's employment with Tesla: an offer letter with an arbitration provision and a nondisclosure agreement without an arbitration provision.

#### 1. Offer Letter

On February 2, 2021, Tesla electronically sent Wise a written offer of employment as a production associate (Offer Letter). The Offer Letter set forth terms of Wise's prospective employment. It identified her compensation and benefits, noting that "Tesla reserves the right to modify your compensation and benefits from time to time, without advance notice, as it deems necessary." It stated that Wise's employment would not be for any specified period and could be terminated without cause or notice. It precluded Wise from holding other employment or conducting other business activity directly related to or in conflict with Tesla's business. It required her to "abide by all Tesla policies and procedures" and, as "a condition of [her] employment, [to] sign and comply with Tesla's standard confidentiality

2

agreement which prohibits unauthorized use or disclosure of Tesla proprietary information or the confidential information of Tesla's clients."

The next paragraphs of the Offer Letter, in small print consistent with the rest of the letter and without a heading, referred to arbitration (Arbitration Agreement). According to those paragraphs, Wise and Tesla would arbitrate "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to [Wise's] employment, or the termination of [her] employment." As exceptions to the arbitration requirement, the Agreement allowed the parties to bring certain administrative claims before a government agency and to obtain "injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration." The Agreement prohibited the parties from filing claims against each other except "in their individual capacities" and precluded them from filing "claims as a plaintiff and/or participat[ing] as a representative in any representative action against the other, except to the extent this provision is unenforceable under the applicable law."

After the Arbitration Agreement, the Offer Letter contained two paragraphs about " 'Confidential Information' " and " 'Business Related Information,' " which Wise was prohibited from disclosing.

The Offer Letter stated that Wise's first day of employment would be February 16, 2021. It conditioned the offer on proof of Wise's right to work in the United States and certain preemployment screenings. Wise electronically signed the Offer Letter on February 3, 2021.

### 2. The Nondisclosure Agreement

On February 3, 2021, Wise also electronically signed a document entitled, "Tesla, Inc. Employee Non-Disclosure and Inventions Assignment Agreement" (NDIAA). As the NDIAA set forth, Wise agreed to its terms "[i]n

3

consideration of [her] employment or continued employment by TESLA, INC. . . . and the compensation now and hereafter paid to [her]." The NDIAA was to be "effective as of the first day of [Wise's] employment."

The NDIAA required Wise to safeguard Tesla's proprietary and confidential business information and records and to agree that a violation of its terms "may cause the Company irreparable harm." Under section 6 of the NDIAA, Tesla could seek injunctive relief or other equitable relief without a bond. Under section 1, if Wise contended that information deemed proprietary under the NDIAA was in the public domain, she would have to prove it by clear and convincing evidence.[2] The NDIAA did not address arbitration.

Consistent with the Offer Letter, Wise began working at Tesla on February 16, 2021. She alleges that her employment was terminated in March 2023.

B. <u>Wise's Lawsuit and Tesla's Motion to Compel Arbitration</u>

In October 2023, Wise sued Tesla in Alameda County Superior Court, alleging disability discrimination, failure to accommodate, failure to engage in the interactive process, retaliation, and failure to prevent discrimination and retaliation, all in violation of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA). She also alleged a claim for wrongful termination in violation of public policy. It is undisputed that Wise's claims fell within the scope of the Arbitration Agreement. It is also

---

[2] The NDIAA provided that Proprietary Information "excludes any information that is or lawfully becomes part of the public domain" but stated that Wise agreed that "in any dispute related to this Agreement, [she would] bear the burden of proving by clear and convincing evidence the applicability of this exclusion."

undisputed that none of her claims raised an issue about Tesla's confidential or proprietary information or sought injunctive relief.

      1.  <u>Tesla's Motion to Compel Arbitration and Wise's Opposition</u>

Tesla moved to compel arbitration, contending that the Arbitration Agreement was governed by the FAA and covered Wise's claims. (Code Civ. Proc., § 1281.2.) The trial court granted Tesla's request for judicial notice of 29 decisions in which courts had compelled arbitration based on the same or similar arbitration agreements.

Wise opposed arbitration on several grounds. First, she asserted that Tesla failed to authenticate Elon Musk's signature on the Offer Letter with the Arbitration Agreement.

Second, Wise argued that the Arbitration Agreement was procedurally unconscionable as a contract of adhesion and substantively unconscionable because of a " ' "one-sided" ' " provision precluding her from participating in a representative action.

Third, Wise argued that the Arbitration Agreement and the NDIAA were related and should be read together under section 1642. She further argued that two provisions of the NDIAA were substantively unconscionable, and that those provisions tainted the Arbitration Agreement and precluded its enforcement.[3] In particular, Wise asserted that section 6 (waiver of bond) and section 1 (proof of public domain by clear and convincing evidence) were unconscionable. She asked the trial court to deny arbitration, rather than sever these provisions from the Arbitration Agreement.

---

[3]    Section 1642 provides that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

## 2. Denial of Tesla's Motion

The trial court denied Tesla's motion. The court rejected Wise's authentication argument. It also found that the Arbitration Agreement presented a "low degree of procedural unconscionability" as a contract of adhesion, but that its forced waiver of representative actions did not render it substantively unconscionable.

The trial court then decided that the Arbitration Agreement and the NDIAA should be construed together under section 1642, because they were signed by Wise "on the same day as conditions of [Wise's] employment and include related subject matter[] and were therefore part of the same transaction." The court therefore "consider[ed] the agreements together for purposes of determining whether" "the Arbitration Agreement [was] unconscionable." Relying on *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482 (*Alberto*), the court found that "the [NDIAA] provision in Section 6 (the bond waiver)" was unconscionably one-sided. Finding persuasive the reasoning in *Hannah Hollocks v. Tesla, Inc.* (Super. Ct. L.A. County, 2023, No. 20STCP00884) (*Hollocks*), the court found that Section 1 (clear and convincing evidence requirement) was one-sided as well. The court concluded: "Sections 1 and 6 of the NDIAA have a high degree of substantive unconscionability. Accordingly, the [c]ourt finds that the Arbitration Agreement is permeated by unconscionability[] and declines to exercise its discretion to sever the unconscionable provisions. [¶] Tesla's motion to compel arbitration is denied." Tesla timely appealed.

## II. DISCUSSION

Tesla contends that the FAA preempts section 1642, that the Arbitration Agreement should not be read together with the NDIAA under

6

section 1642, that the terms of the NDIAA were not unconscionable, and that the terms, if deemed unconscionable, should have been severed.

We reject Tesla's contention that the FAA preempts section 1642. We assume without deciding that the trial court properly considered the NDIAA and the Arbitration Agreement together under section 1642. (*Alberto*, *supra*, 91 Cal.App.5th at pp. 489–491.) We also assume without deciding that sections 1 and 6 of the NDIAA were unconscionable. We conclude, however, that the court should have severed those purportedly unconscionable sections of the NDIAA and enforced the Arbitration Agreement pursuant to *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 518–519 (*Ramirez*).

A. FAA Preemption

Tesla asserts (and Wise does not dispute) that the FAA governs the interpretation and enforcement of the Arbitration Agreement due to Tesla's multistate operations affecting interstate commerce. According to Tesla, the FAA does not allow a challenge to an arbitration agreement based on contractual provisions outside that agreement. It therefore argues that the trial court erred by reading the NDIAA and the Arbitration Agreement together under section 1642 and then using NDIAA provisions to find the Arbitration Agreement unenforceable. Specifically, it urges that the FAA preempts section 1642 and that the Arbitration Agreement should have been enforced as a matter of federal substantive law. We disagree.

Tesla's arguments rest primarily on *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63 (*Rent-A-Center*) and *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440 (*Buckeye*). But neither supports Tesla's arguments.

In *Buckeye*, customers and Buckeye Check Cashing (Buckeye) entered into contracts that contained a clause requiring the arbitration of their

7

disputes. (*Buckeye*, *supra*, 546 U.S. at p. 442.) The customers later sued Buckeye in state court on the ground that the contracts were void because they charged usurious interest rates. (*Id*. at p. 443.) The trial court denied Buckeye's motion to compel arbitration, ruling that the court, rather than the arbitrator, should resolve challenges to the validity of the contract. (*Ibid*.) The United States Supreme Court disagreed, holding that the validity of the contract was to be decided by the arbitrator because (1) as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract; (2) the arbitrator decides the contract's validity, and the court only decides a challenge to the validity of the arbitration provision itself; and (3) since this rule is substantive, rather than procedural, it applies to state and federal courts alike. (*Id*. at pp. 445–449; see *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 402–404.) While the party opposing arbitration in *Buckeye* did not challenge the validity of the arbitration provision itself, Wise did so here.

In *Rent-A-Center*, a former employee filed an employment discrimination claim against his former employer. (*Rent-A-Center*, *supra*, 561 U.S. at p. 65.) The employer sought to compel arbitration pursuant to a stand-alone arbitration agreement that the employee signed as a condition of employment. (*Ibid*.) The employee opposed on the ground that the arbitration agreement as a whole was unconscionable. (*Id*. at p. 66.) The district court denied the motion because the agreement expressly gave exclusive authority to decide its enforceability to the arbitrator. (*Ibid*.) The Ninth Circuit reversed in part, holding that the threshold question of unconscionability was for the district court. (*Id*. at p. 67.)

The issue before the United States Supreme Court was whether, under the FAA, a district court may decide a claim that an arbitration agreement is

unconscionable where it explicitly delegated that decision to the arbitrator. (*Rent-A-Center*, *supra*, 561 U.S. at p. 65.)  The high court reiterated that a district court may consider a challenge to the validity of the agreement to arbitrate in deciding whether to enforce the arbitration agreement, but not a challenge to the contract as a whole.  (*Id*. at p. 70.)  That is because the FAA "states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." (*Ibid*.)  "Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."  (*Ibid*.)

The Supreme Court then took things a step further because the arbitration agreement comprised the entire contract.  The key provision was the one that delegated to the arbitrator exclusive authority to decide the enforceability of the arbitration agreement.  (*Rent-A-Center*, *supra*, 561 U.S. at p. 71.)  The party opposing arbitration was therefore obligated to challenge that provision specifically.  The employee, however, challenged only the arbitration agreement as a whole and did not claim that the delegation provision was procedurally and substantively unconscionable in and of itself. (*Id*. at p. 73.)  Because the issue of the validity of the arbitration agreement as a whole was for the arbitrator, the court should have enforced the arbitration agreement and let the arbitrator decide it.  (*Id*. at pp. 72–76.)  Here, by contrast, the Arbitration Agreement did not contain a delegation provision, leaving the issue of the validity of the Agreement as a whole or in part for the trial court.

Despite their differences from this case, Tesla insists that *Rent-A-Center* and *Buckeye* establish that the severability rule—deeming an arbitration agreement severable from the rest of the contract in which it

9

appears—is a substantive rule that preempts any contrary state law. According to Tesla, "the FAA *preempts* any state law, including [s]ection 1642, that prevents enforcement of an arbitration provision based on contract terms outside of those contained in the specific arbitration agreement." (Italics added.) It even declares that *Buckeye* held that "the FAA *preempted* the application of a Florida law that precluded enforcement of an arbitration provision in a contract that later proved to be void based on a challenge to provision[s] of the contract other than the arbitration clause." (Italics added.)

But neither *Rent-A-Center* nor *Buckeye* even mentioned preemption, let alone based their decisions on it. Nor do those cases suggest that preemption is the proper vehicle for analyzing the issues presented here.

Three bases exist for federal preemption of state law: "(1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." (*Industrial Truck Assn., Inc. v. Henry* (9th Cir. 1997) 125 F.3d 1305, 1309.)

Tesla has not shown that any of these bases for preemption apply here. Section 1642 is a rule of contract interpretation applicable to *all* contracts. (See *Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 694.) It does not purport to regulate arbitration, and nothing in its language conflicts with the FAA. In providing that related contracts should be "taken together," it neither favors nor disfavors arbitration. (§ 1642.) And contrary to Tesla's suggestion, section 1642 does not necessarily prevent enforcement

10

of an arbitration provision based on contract terms outside of that provision. Instead, it merely establishes what provisions are encompassed within an arbitration provision under general California contract law. As such, the FAA does not preempt section 1642. (See *Hohenshelt v. Superior Court* (2025) 18 Cal.5th 310, 323 [FAA did not preempt Code of Civil Procedure section 1281.98 because its mandatory sanction of paying reasonable expenses was consistent with general contract law, because a drafting party could avoid forfeiture of its right to arbitrate under principles generally applicable to other contractual obligations, and because it did not affect arbitral procedure].)[4]

We recognize that the *application* of section 1642 might ultimately result in a ruling inconsistent with Tesla's premise that arbitration cannot be denied based on provisions outside the agreement to arbitrate. The cases that Tesla cites for that proposition, however, did not rely on a *preemption* theory. (E.g., *Lara v. Onsite Health, Inc.* (N.D. Cal. 2012) 896 F.Supp.2d 831, 843 (*Lara*); *Vasquez v. RSI Home Prod., Inc.* (C.D.Cal., Nov. 12, 2020, No. 8:20-cv-01494-JWH-JDEx) 2020 U.S.Dist. Lexis 217490 (*Vasquez*); see *Ramirez*, *supra*, 16 Cal.5th at pp. 518–519 [the FAA does not preempt the *Ramirez* test for determining whether unconscionable provisions should be severed from a contract].)

---

[4] In *Silva v. Cross Country Healthcare, Inc.* (2025) 111 Cal.App.5th 1311, 1323, fn. 10 (*Silva*), the appellant asserted at oral argument that the FAA preempts section 1642 under *Buckeye*. *Silva* ruled that the argument was waived. It further observed that the argument "lacks merit because *Buckeye*'s specific holding has nothing to do with reading one agreement in light of another, and because FAA preemption is designed to place arbitration agreements on *equal* footing with other contracts—not, as [the appellant] urges, to put them on *better* footing by exempting them from the ordinary application of section 1642." (*Silva*, at p. 1323, fn. 10.)

Moreover, contrary to Tesla's premise, the FAA does not require trial courts to ignore unconscionable provisions outside an arbitration agreement as a matter of federal substantive law. Neither *Rent-A-Center* nor *Buckeye* suggested that a court is powerless to consider contractual provisions outside the contract's arbitration clause when deciding whether the arbitration agreement is valid. Such a rule would be untenable, because an employer could place unconscionable terms one paragraph before the contract's arbitration clause with impunity even if those terms made the arbitration agreement unfairly one-sided for the employer. That is not the holding of *Buckeye* and *Rent-A-Center*.

Rather, *Buckeye* and *Rent-A-Center* simply held that the trial court can consider only challenges to an arbitration provision's validity, and not challenges to the validity of the broader contract, when deciding whether claims covered by that provision should be arbitrated. (*Silva*, *supra*, 111 Cal.App.5th at p. 1332; *Jackpot Harvesting, Inc. v. Applied Underwriters, Inc.* (2019) 33 Cal.App.5th 719, 730–733 (*Jackpot*).) As *Rent-A-Center* explained, the court decides the enforceability of the arbitration agreement if the party " 'challenges specifically the validity of the agreement to arbitrate.' " (*Rent-A-Center*, *supra*, 561 U.S. at p. 70.) But if the party challenges " 'the contract as a whole, either on a ground that directly affects the *entire* agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders *the whole contract* invalid,' " then the dispute must be decided by the arbitrator. (*Rent-A-Center*, at p. 70, italics added; see *Jackpot*, at p. 730.) Here, Wise challenged the arbitration agreement specifically, contending in her opposition to the motion to compel that the arbitration agreement was unenforceable due to the unconscionable NDIAA provisions.

*Jackpot*—which neither party cited—rejected years ago the notion that *Buckeye* and *Rent-A-Center* insulated provisions outside the four corners of the arbitration clause from scrutiny. In *Jackpot*, the appellant argued that a challenge to an arbitration agreement was infirm under *Rent-A-Center* because it " 'depend[ed] upon contract provisions and evidence unrelated to the particular arbitration provision[] . . . being challenged.' " (*Jackpot, supra*, 33 Cal.App.5th at p. 733.) The Court of Appeal disagreed, observing that the appellant's argument "misconstrue[d] the holding in *Rent-A-Center*," which had held that the trial court " '*must consider*' " a challenge to the validity of the arbitration agreement. (*Ibid*.) According to the Court of Appeal, "*Rent-A-Center* did not impose any requirement that the challenge could only be based on matters within the arbitration agreement itself. Instead[,] *Rent-A-Center* required 'the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.' " (*Id.* at p. 733.)[5]

The federal district court cases on which Tesla relies are unavailing. Decisions by a district court judge are not binding on this court. (*Ram's Gate Winery, LLC v. Roche* (2015) 235 Cal.App.4th 1071, 1080.) Furthermore, the parties resisting arbitration in *Lara* and *Vasquez* apparently did not argue

---

[5] As *Alberto* observed, under the FAA, "issues that go to the validity of an underlying contract, as opposed to the validity of an arbitration agreement itself, are normally decided by an arbitrator, not the court." (*Alberto, supra*, 91 Cal.App.5th at p. 494, fn. 4, citing *Buckeye, supra*, 546 U.S. at pp. 445–446.) The parties in *Alberto* did not brief this rule, and the *Alberto* court did not consider it except to note that a provision restricting the employee's disclosure of wage information was "not merely a generally illegal provision, but an illegal provision that directly affects the *one-sidedness of the arbitration process*." (*Alberto*, at p. 494, fn. 4, italics added.) Notwithstanding *Buckeye* and the FAA, the court upheld the refusal to sever the offending provisions and enforce the arbitration agreement.

that unconscionable provisions in other agreements rendered the arbitration agreement itself invalid because they should be read together. (*Lara, supra*, 896 F.Supp.2d at p. 843; *Vasquez, supra*, 2020 U.S.Dist. Lexis 217490, at pp. *54–*55.) Here, Wise did.

In short, *Buckeye* and *Rent-A-Center* did not preclude the trial court from considering provisions of the NDIAA along with the Arbitration Agreement pursuant to section 1642. Assuming that the court did so properly here, we proceed to the analysis decreed by our high court in *Ramirez, supra*, 16 Cal.5th 478.

B. <u>Severance of Unconscionable Terms Under *Ramirez*</u>

Under section 1670.5, once a trial court has determined that a contract or any of its clauses is unconscionable, it may "do one of the following: (1) refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results." (*Ramirez, supra*, 16 Cal.5th at p. 513; see § 1670.5, subd. (a).) "The 'strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement.' " (*Ramirez*, at p. 513.) Accordingly, the court has discretion not to sever, and to thus refuse to enforce the entire agreement, " 'only when an agreement is "permeated" by unconscionability.' " (*Ibid*.; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 122 (*Armendariz*).)

Assuming that the NDIAA provisions were unconscionable and could be considered with the Arbitration Agreement under section 1642 as part of a single contract, the question is whether those provisions should nonetheless have been severed under section 1670.5 so the Arbitration Agreement could be enforced. Reviewing for abuse of discretion (*Ramirez, supra*, 16 Cal.5th at p. 513; *Alberto, supra*, 91 Cal.App.5th at p. 495), we conclude that the trial

14

court erred in declining to sever the NDIAA provisions and refusing to enforce the Arbitration Agreement without those provisions.[6]

###### 1. The *Ramirez* Test

In *Ramirez*, Charter Communications, Inc. (Charter) fired Ramirez and Ramirez sued. (*Ramirez, supra*, 16 Cal.5th at p. 490.) Charter sought to compel arbitration pursuant to the parties' arbitration agreement. Ramirez contended that the agreement contained unconscionable provisions that should not be severed to save the agreement. (*Ibid.*) The trial court refused to sever the provisions, finding they were so numerous that the agreement was " 'permeated with unconscionability.' " (*Ibid.*)

In reversing, our Supreme Court observed that the test for severability is qualitative rather than quantitative. (*Ramirez, supra*, 16 Cal.5th at pp. 515–516.) The trial court should first "ask whether 'the central purpose of the contract is tainted with illegality.' [Citation.] If so, the contract cannot be cured, and the court should refuse to enforce it." (*Ibid.*) If the central purpose is not tainted, however, the court should ask "whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or [if] reformation by augmentation is necessary." (*Ibid.*) Finally, "[e]ven if a contract *can* be cured, the court should also ask whether the

---

[6] When the trial court declined to sever the two NDIAA provisions, our Supreme Court had not yet issued *Ramirez, supra*, 16 Cal.5th 478. Nonetheless, we see no reason to remand so the trial court can reconsider its decision not to sever in light of *Ramirez*. First, *Ramirez* appeared to restate existing law. Indeed, we would reach the same conclusion applying a pre-*Ramirez* analysis because the situation here is distinguishable from the cases upholding a decision not to sever unconscionable provisions. Second, there is no reasonable probability that the court on remand could properly conclude under *Ramirez* that the NDIAA should not be severed.

15

unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions." (*Ibid.*)

In short, "courts may liberally sever any unconscionable portion of a contract and enforce the rest when: [1] the illegality is collateral to the contract's main purpose; [2] it is possible to cure the illegality by means of severance; *and* [3] enforcing the balance of the contract would be in the interests of justice." (*Ramirez, supra*, 16 Cal.5th at p. 517.) Applying these considerations, we conclude that the failure to sever the allegedly unconscionable NDIAA provisions was an abuse of discretion.

### 2. Application

The first prong of the *Ramirez* inquiry examines "whether 'the central purpose of the contract is tainted with illegality.' " (*Ramirez, supra*, 16 Cal.5th at p. 516.) The question is whether the illegality of the unconscionable provisions is collateral to the arbitration agreement's main purpose. (*Id.* at p. 517.) We conclude here that it is.

The main purpose of the Arbitration Agreement is to require the arbitration of nearly all disputes between the parties. The illegality of the bond waiver and burden of proof provisions is collateral to that purpose. The bond waiver arises only when Tesla seeks injunctive or equitable relief from the trial court for an employee's breach regarding Tesla's proprietary information. The burden of proof provision applies only when an employee contends that Tesla's information is in the public domain and is thus not proprietary. Neither provision makes the Arbitration Agreement's central purpose illegal. Moreover, the purportedly unconscionable NDIAA provisions do not come into play at all in the adjudication of Wise's causes of action against Tesla. As Tesla points out with no dispute from Wise, none of those

16

causes of action implicate Tesla's proprietary, confidential or trade secret information.

The second prong of the *Ramirez* inquiry examines "whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or [if] reformation by augmentation is necessary." (*Ramirez*, *supra*, 16 Cal.5th at p. 516.) Wise does not address this prong. This is presumably because severance of the NDIAA provisions is plainly viable without reformation or augmentation of the Arbitration Agreement. Indeed, those provisions were not included in the Arbitration Agreement in the first place.

The final prong of the *Ramirez* test asks whether severance of the unconscionable terms serves the interests of justice. (*Ramirez*, *supra*, 16 Cal.5th at p. 516.) This part of the analysis focuses on whether the employer embarked on an "illegal scheme" or a "systematic effort to impose arbitration . . . to secure a forum that works to the stronger party's advantage." (*Id.* at pp. 516–517.) An illegal scheme is one that includes in the arbitration provisions "a deliberately illegal clause" "drafted in bad faith." (*Armendariz*, *supra*, 24 Cal.4th at p. 124, fn.13.) But the question is not simply whether, at the time of contracting, the employer pursued an "illegal scheme" or a "systematic effort" to secure an advantageous forum. (*Ramirez*, at pp. 516–517.) Rather, "the decision whether to sever unconscionable provisions and enforce the balance is a qualitative one, *based on the totality of the circumstances*." (*Id.* at p. 518, italics added.) Thus, the question in this case is whether, at the time of the trial court's ruling, the interests of justice required severance of the allegedly unconscionable terms so that the parties' agreement to arbitrate can be enforced. And the answer to that question necessarily turns on how the allegedly illegal scheme or systematic effort

17

might affect the arbitration of the parties' claims and the mutuality of the arbitration forum generally.

Here, there was no unconscionable term in the arbitration provisions themselves. Moreover, whether Tesla's NDIAA provisions reflected an illegal scheme or not, any such scheme did not secure a forum (arbitration) that worked to Tesla's advantage. The NDIAA provisions do not apply exclusively to the arbitration; they apply to all proceedings, including court proceedings seeking injunctive relief pending the arbitration. More importantly, the provisions do not apply at all to Wise's causes of action. To put it another way, there is no lack of mutuality in the arbitration of Wise's claims. Mindful of the " 'strong legislative and judicial preference . . . to sever the offending term and enforce the balance of the agreement,' " the existence of severance clauses in the Arbitration Agreement and the NDIAA, and the burden on Wise to show that the Arbitration Agreement should not be enforced (*Ramirez*, *supra*, 16 Cal.5th at pp. 513, 517), we conclude that the interests of justice necessarily favor severance.[7]

---

[7] Although we conclude that the trial court abused its discretion in declining to sever the unconscionable NDIAA provisions, we find a number of Tesla's arguments unpersuasive. First, Tesla contends that the court erred because it indulged in a quantitative rather than qualitative analysis. (See *Ramirez*, *supra*, 16 Cal.5th at p. 518 ["court cannot refuse to enforce an [arbitration] agreement *simply* by finding that two or more collateral provisions are unconscionable as written and *eschewing any further inquiry*," italics added].) We indulge all inferences supporting the court's decision, and the record does not disclose that it ruled based merely on the number of unconscionable provisions. Moreover, *Ramirez* recognized that a greater number of unconscionable terms may make severance inappropriate by suggesting an employers' perverse intentions. (*Id.* at p. 517.) Second, Tesla argues that the first prong of the *Ramirez* test favors severance here because the Arbitration Agreement has a legal purpose. However, the question is not whether the agreement has a legal purpose, but whether the unconscionable provisions taint it. Third, Tesla argues that the bond waiver and evidentiary

Because all three conditions for severance under *Ramirez* exist here, we conclude that the allegedly unconscionable NDIAA provisions should have been severed and that the Arbitration Agreement (sans those provisions) should have been enforced.

### 3. Other Cases Are Distinguishable

Cases finding that a trial court did not abuse its discretion by refusing to sever unconscionable terms are distinguishable. That includes cases decided after *Ramirez*. (*Gurganus v. IGS Solutions LLC* (2025) 115 Cal.App.5th 327, 336–340 [presuming that unconscionability permeated the arbitration agreement where arbitration was required for likely employee claims but not for likely employer claims, employer could seek injunctive relief without posting a bond, and a confidentiality provision broadly limited the employee's ability to conduct informal discovery]; *Silva, supra*, 111 Cal.App.5th at pp. 1328–1332 [severance did not serve the interests of justice where unconscionable provisions required the employee but not the employer to arbitrate claims, forced the employee to concede the validity of noncompete, nondisclosure, and nonsolicitation provisions, and enabled the employer to obtain an injunction without proof of irreparable harm or a bond]; *Ramirez v. Charter Communications, Inc.* (2025) 108 Cal.App.5th 1297, 1301 (*Ramirez II*) [severance was contrary to the interests of justice where the employer required arbitration only for employee claims, forced arbitration before investigation, and required the employee to pay arbitral

standard were legal and therefore not part of an illegal scheme or drafted in bad faith. To the contrary, the two provisions were (and are) contrary to the law. We need not decide whether this reasonably leads to the conclusion that Tesla included in the NDIAA "deliberately illegal clauses" that it had "drafted in bad faith," because the court did not make that finding and, in any event, the provisions do not affect the arbitration of Wise's claims.

19

fees and costs]; *Jenkins v. Dermatology Management, LLC* (2024) 107 Cal.App.5th 633, 643–650 [court acted within its discretion when it concluded that the interests of justice were not furthered by severing unconscionable terms in the arbitration agreement itself, which required employees but not the employer to arbitrate all claims, imposed an unreasonably short limitations period, forced employees to share equally in the arbitral costs and fees contrary to *Armendariz*, and imposed unreasonable discovery limitations].) It also includes cases decided before *Ramirez*. (E.g., *Alberto*, *supra*, 91 Cal.App.5th at pp. 489–496, 494, fn. 4 [unconscionable provisions allowing the employer to obtain an injunction without a showing of irreparable harm or bond, requiring the employee to keep salary information confidential (which "directly affect[ed] the one-sidedness of the arbitration process"), and waiving all "PAGA" claims permeated the arbitration agreement and could reflect the employer's systematic effort to impose arbitration as an inferior forum to the employer's advantage]; *Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035, 1067 [arbitration agreement permeated with unconscionability because it contained unconscionable provisions barring reallocation of administrative arbitration costs, requiring the employee to share costs of the arbitration hearing, shifting responsibility for attorney fees for claims pursued outside of arbitration, failing to provide for sufficient discovery, and barring the tolling of the statute of limitations for the claimant's benefit].)

Unlike the foregoing cases, the unconscionable NDIAA provisions do not permeate the Arbitration Agreement. They do not affect who must arbitrate, what can be arbitrated, or how the arbitration would proceed. Nor do they render arbitration an inferior forum that works to Tesla's advantage, particularly as to Wise's causes of action. Here, there is no nexus between

20

the unconscionable provisions and this arbitration, and there is little or no likelihood that the arbitration would be affected by those provisions given the causes of action and defenses asserted by Wise and Tesla.  Accordingly, the trial court's refusal to sever the NDIAA provisions and enforce the Arbitration Agreement was an abuse of discretion that we must reverse.

## III.  <u>DISPOSITION</u>

The order is reversed.  Appellant shall recover its costs on appeal from respondent.

CHOU, J.

WE CONCUR:

JACKSON, P.J.
BURNS, J.

A170983/*Wise v. Tesla Motors, Inc.*

21

Trial Court:      Alameda County Superior Court

Trial Judge:      Hon. Elizabeth L. Riles

Counsel:          Morgan, Lewis & Bockius, Roshni C. Kapoor, and John S.
                     Battenfeld for Defendant and Appellant

                  Wilshire Law Firm, John G. Yslas, Jeffrey C. Bils, and
                     Edward E. Kim for Plaintiff and Respondent